**UNITED STATES of America,
Plaintiff, Appellee,**

v.

**KAYSER–ROTH CORP., INC.,
Defendant, Appellant.**

**No. 90–1190.**

United States Court of Appeals,
First Circuit.

Heard June 7, 1990.

Decided Aug. 2, 1990.

Rehearing and Rehearing En Banc
Denied Sept. 7, 1990.

---

Deming E. Sherman (argued), Providence, R.I., with whom Lynn Wright and Edwards & Angell, New York City, were on brief, for defendant, appellant.

J. Carol Williams, Atty., Dept. of Justice (argued), with whom Cynthia S. Huber and Jacques B. Gelin, Attys., Dept. of Justice, Washington, D.C., Lincoln C. Almond, U.S. Atty., Providence, R.I., Richard B. Stewart, Asst. Atty. Gen., Cambridge, Mass., and Michael Iannotti, Asst. U.S. Atty., Providence, R.I., were on brief, for plaintiff, appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.

BOWNES, Senior Circuit Judge.

Kayser–Roth Corporation (Kayser) appeals from a decision by the district court of Rhode Island holding it liable as both an "owner" and "operator" for the cleanup costs incurred by the Environmental Protection Agency in response to a spill of trichloroethylene (TCE) at the Stamina Mills textile plant (the site). Stamina Mills, Inc. (Stamina), the nominal owner of the site, was a wholly owned subsidiary of Kayser prior to Stamina's dissolution in 1977.[1] The government has sought to recover its cleanup costs from Kayser under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. (CERCLA), based on direct liability (Kayser as operator of the site) and indirect liability (Kayser as owner by "piercing the corporate veil"). Kayser argues that the parent company of a dissolved subsidiary cannot, as a matter of

---

1. A detailed description of the corporate structure can be found in the district court opinion.

*United States v. Kayser–Roth Corporation*, 724 F.Supp. 15 (D.R.I.1989).

law, be held liable on either ground. We disagree, and affirm on the basis that Kayser is liable as an operator.

CERCLA was enacted in response to the increasing concern about the vast problems of the disposal of and contamination from hazardous waste throughout the country. It is a remedial statute designed to protect and preserve public health and the environment. Because CERCLA is a remedial statute,

> we.... construe its provisions liberally to avoid frustration of the beneficial legislative purpose. With this in mind, we join the Second Circuit in proclaiming that 'we will not interpret section 9607(a) in any way that apparently frustrates the statute's goals.'

*Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986) (*quoting New York v. Shore Realty*, 759 F.2d 1032, 1045 (2d Cir.1985)) (*Dedham I*).

The Act empowers the government to use money from the "superfund" to clean up hazardous waste sites. 42 U.S.C. § 9604(a). Any "person" who is the "owner" or "operator" of a facility at the time of the disposal[2] of a hazardous substance shall be liable for, among other things, all of the costs of removal or other remedial action incurred by the United States. 42 U.S.C. § 9607(a)(2). Liability for the cost incurred is strict[3] and joint and several.[4]

## I.

■ We begin our discussion with the issue of whether a parent corporation may be held directly liable as an operator. "Operator" is defined circularly in the statute as any person[5] operating a facility.[6] 42 U.S.C. § 9601(20)(A)(ii).[7] Congress, by including a liability category in addition to owner ("operators") connected by the conjunction "or," implied that a person who is an operator of a facility is not protected from liability by the legal structure of ownership. Given this grammatical construction and the broad definition of "person," corporate status, while relevant to determine ownership, cannot shield a person from operator liability. In addition, the legislative history provides no indication that Congress intended "all persons" who are "operators" to exclude parent corporations. *Shore*, 759 F.2d at 1044 (reviewing congressional intent and determining that the final version of the statute "imposed liability on classes of persons without reference to whether they caused or contributed to the release or threat of release"). Thus, our analysis of the statute and its legislative purpose and history reveals no reason why a parent corporation cannot be held liable as an operator under CERCLA.

Our decision is supported by the interpretation given "operator" by other courts.

---

**2.** At oral argument, Kayser argued that the spill was an accident and thus not "disposal" under CERCLA; but spilling is explicitly part of the statutory definition. *See* 42 U.S.C. § 9601(29) (referring to 42 U.S.C. § 6903(3)).

**3.** *See, e.g., Dedham Water Company v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir.1989) (*Dedham II*); *New York v. Shore Realty*, 759 F.2d 1032, 1042 (2d Cir.1985) (reviewing cases and legislative history on liability).

**4.** *See, e.g., O'Neil v. Picillo*, 883 F.2d 176, 178–79 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1989).

**5.** The statute defines "person" extremely broadly and certainly includes a parent corporation. 42 U.S.C. § 9601(21). Kayser does not seriously contest that it is a person within the meaning of the statute.

**6.** Owner liability is similarly circular with the additional explicit limitation that when the ownership interest is primarily a security interest

without participation in the management of the facility the owner is not liable for cleanup costs. 42 U.S.C. § 9601(20)(A)(iii). That exclusion indicates that if limited owners participate in management, they may be held liable. *Shore*, 759 F.2d at 1052; *see also United States v. Fleet Factors Corp.*, 901 F.2d 1550 (11th Cir.1990) (owner through security interest can be held directly liable if actively involved in management).

**7.** 42 U.S.C. § 9601(20)(A) provides:

> The term "owner or operator" means ... (ii) in the case of an onshore facility or an offshore facility, any person owning or operating such facility, and (iii).... Such term does not include a person, who, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest in the vessel or facility.

*See, e.g., United States v. Northeastern Pharmaceutical,* 810 F.2d 726, 743–44 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987) (individual liability under § 9607(a)(3)); *Idaho v. Bunker Hill Co.,* 635 F.Supp. 665 (D.Idaho 1986) (parent corporation liable as operator). For example, the majority shareholder of a corporation has been held individually liable as an operator under CERCLA. *Shore,* 759 F.2d at 1052. In addition, a corporation that was an owner through holding a security interest and became active in the management of the corporation has been held liable. *United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1557 (11th Cir.1990).

We are unpersuaded by the case upon which Kayser relies most heavily to support its position. *Joslyn Mfg. Co. v. T.L. James & Co.,* 893 F.2d 80 (5th Cir.1990). Although there is some broad language in *Joslyn* that might support Kayser's position, the opinion is concerned primarily with owner rather than operator liability. The *Joslyn* court framed its issue as whether to "impose direct liability on parent corporations for the violations of their wholly owned subsidiaries." *Joslyn,* 893 F.2d at 81. On the theory of the case presently under consideration, Kayser is being held liable for *its* activities as an operator, not the activities of a subsidiary. Our reading of the *Joslyn* case is bolstered by a fifth circuit district court's narrow interpretation of the *Joslyn* case. *Riverside Market Devel. Corp. v. International Building Products,* 1990 WL 72249, 1990 U.S.Dist. LEXIS 6375 (E.D.La.1990) (distinguishing *Joslyn* and following *Shore Realty* and *Northeastern Pharmaceutical* in holding individual liable as operator and noting that in *Joslyn* there was no participation by parent in activities of subsidiary).

In sum, we believe that a fair reading of CERCLA allows a parent corporation to be held liable as an operator of a subsidiary corporation.

II.

▮ We now examine whether the district court correctly held that Kayser was an operator. This determination is reviewed only for clear error. *See Lynch v. Dukakis,* 719 F.2d 504, 513 (1st Cir.1983). Without deciding the exact standard necessary for a parent to be an operator, we note that it is obviously not the usual case that the parent of a wholly owned subsidiary is an operator of the subsidiary. To be an operator requires more than merely complete ownership and the concomitant general authority or ability to control that comes with ownership. At a minimum it requires active involvement in the activities of the subsidiary.

The district court's excellent opinion found that "Kayser–Roth ... exerted practical total influence and control over Stamina Mills' operations." *United States v. Kayser–Roth Corp.,* 724 F.Supp. 15, 18 (D.R.I.1989). The court summarized the evidence as follows:

> Kayser–Roth exercised pervasive control over Stamina Mills through, among other things: 1) its total monetary control including collection of accounts payable; 2) its restriction on Stamina Mills' financial budget; 3) its directive that subsidiary—governmental contact, including environmental matters, be funneled directly through Kayser–Roth; 4) its requirement that Stamina Mills' leasing, buying or selling of real estate first be approved by Kayser–Roth; 5) its policy that Kayser-Roth approve any capital transfer or expenditures greater than $5000; and finally, its placement of Kayser–Roth personnel in almost all Stamina Mills' director and officer positions, as a means of totally ensuring that Kayser–Roth corporate policy was exactly implemented and precisely carried out.

*Id.* at 22. Kayser's control included environmental matters including the approval of the installation of the cleaning system that used the TCE.[8] The district court found

8. Although indicia of ability to control decisions about hazardous waste are indicative of the type of control necessary to hold a parent corporation liable as an operator, we do not think the presence of such indicia is essential, assuming there are other indicia of the pervasive control necessary to prove operator status.

Kayser had the power to control the release or threat of release of TCE, had the power to direct the mechanisms causing the release, and had the ultimate ability to prevent and abate damage. Kayser–Roth knew that Stamina Mills employed a scouring system that used TCE; indeed [it] approved the installation of that system ... [and] was able to direct Stamina Mills on how the TCE should have been handled.

*Id.* Such control is more than sufficient to be liable as an operator under CERCLA.

██ Kayser argues vehemently that it was blameless for the spill, which was caused by a third party and was not brought to Kayser's attention until years later.[9] Kayser misunderstands CERCLA. Under this strict liability statute, all that it is necessary to prove is that Kayser was an operator at the time of the spill. Although CERCLA includes a limited affirmative defense that the spill was caused by a third party, that defense does not help Kayser because it only applies if the third party was not in a contractual relationship with the operator, which was not the case here. 42 U.S.C. § 9607(b)(3).[10]

Based on the record, we find that the district court did not err in finding that Kayser was an operator and in holding it liable for the cost of the cleanup.[11]

AFFIRMED.

---

9. The government contests Kayser's statement that it didn't know of the spill for years. We do not take a position on this factual issue.

10. 42 U.S.C. § 9607(b) provides that:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

.  .  .  .  .

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.

11. Because we decide that the district court was not clearly erroneous in finding that Kayser was an operator, we do not need to consider the various arguments advanced regarding Kayser's liability as an owner.