UNITED TECHNOLOGIES
CORPORATION, et al.,
Plaintiffs, Appellants,

v.

BROWNING–FERRIS INDUSTRIES,
INC., et al., Defendants,
Appellees.

No. 93–2253.

United States Court of Appeals,
First Circuit.

Heard April 7, 1994.

Decided Aug. 19, 1994.

Peter Buscemi, with whom Howard T. Weir, Thomas J. O'Brien, Ellen B. Steen, Morgan, Lewis & Bockius, Washington, DC, Jeffrey A. Thaler, and Berman & Simmons, P.A., Lewiston, ME, were on brief, for appellants.

Robert L. Gulley, with whom Samuel B. Boxerman, Sidley & Austin, Washington, DC, John A. Ciraldo, and Perkins, Thompson, Hinckley & Keddy, Portland, ME, were on brief, for appellee Browning–Ferris Industries, Inc.

Arlyn H. Weeks and Conley, Haley & O'Neil, Bath, ME, on brief for appellee Central Maine Power Co.

Edward E. Shea, Clayton A. Prugh, Elizabeth A. Bryson, Windels, Marx, Davies &

Ives, New York City, Nicholas M. Lanzilotta and Colby & Lanzilotta, Augusta, ME, on brief for appellee Carleton Woolen Mills, Inc.

Before BREYER,* Chief Judge,
TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

This appeal demands that we clarify the relationship between cost recovery actions and contribution actions under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675 (1987), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub.L. No. 99–499, § 101 *et seq.*, 100 Stat. 1613 (1986). Having completed our task, we affirm the district court's entry of summary judgment terminating appellants' action as time-barred.

## I. BACKGROUND

The essential facts are not in dispute. In 1981, after discovering hazardous substance contaminants at a landfill in Winthrop, Maine (the Site), the United States Environmental Protection Agency (EPA) placed the Site on its national priority list. The EPA and Maine thereafter undertook a concurrent investigation and determined that Inmont Corporation, since acquired by plaintiff-appellant United Technologies Corporation (UTC),[1] had conducted contamination producing activities at the Site from 1950 to 1975.

In 1982, the EPA notified Inmont that it was liable, under CERCLA, to clean up the Site. Several years of dilly-dallying eventually gave way to negotiations among Inmont and certain other potentially responsible parties (PRPs),[2] on one hand, and the appropriate federal and state officials, on the second hand. The parties reached a tentative agreement and prepared a consent decree. On January 29, 1986, the United States filed a civil action against Inmont and others under CERCLA, with a view toward securing a judicial imprimatur on the proposed decree. The suit alleged that the named defendants were jointly and severally liable for the costs the United States had incurred, and would continue to absorb, in responding to releases and threatened releases at the Site.

The district court promptly consolidated EPA's case with a nearly identical case that Maine had filed against the same defendants; and, on March 23, 1986, the court entered the consent decree. Pursuant thereto, appellants agreed to undertake and complete corrective work at the Site in accordance with a plan for remedial action. The cleanup proved to be expensive: appellants make the uncontradicted claim that remedial work cost in excess of $13,000,000 to date, and that work yet to be done likely will absorb an additional $20,000,000 or more. Appellants also agreed to reimburse, and have since paid, the federal and state sovereigns $475,000 for costs previously incurred with respect to scouring the Site.

On October 16, 1992, appellants brought suit in federal district court against several defendants, including Browning–Ferris Industries, Inc. (Browning).[3] In their complaint, appellants posited claims under both federal and state law. They alleged that the defendants were wholly or partially responsible for contamination of the Site and sought three separate kinds of relief, namely, (1) recovery of cleanup costs paid directly by them (hereinafter "first-instance costs"); (2) recovery of monies paid by them to reimburse the EPA and Maine for cleanup costs (hereinafter "reimbursed costs"); and (3) a

---

* Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

1. UTC acquired Inmont in 1979 and transferred its ownership to BASF Corporation (a UTC subsidiary) in 1985. Inmont then merged into BASF. UTC and BASF brought this suit jointly, and both appear here as appellants.

2. The other PRPs were the Town of Winthrop, Everett Savage, and Glenda Savage. None of them are involved in this appeal.

3. The other named defendants included Carleton Woolen Mills, Inc., Central Maine Power Company, Community Service Telephone Co., Progressive Iron Works, Inc., and Quaker Lace Company. Early in the proceedings, appellants voluntarily dismissed their action against Quaker Lace. The remaining defendants appear here as appellees.

declaration of rights in respect to liability for future response costs.

Browning moved for summary judgment, hypothesizing that CERCLA's statute of limitations barred appellants' federal claims, and that the pendent state claims should, therefore, be dismissed for lack of jurisdiction, *see, e.g., Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir.1989) (explaining that pretrial termination of federal-law claims forces dismissal of pendent state-law claims in the absence of any other cognizable basis for federal jurisdiction). Appellants voluntarily dismissed their claims regarding the reimbursed costs (apparently believing such claims to constitute time-barred contribution claims), but otherwise opposed the motion. A magistrate judge recommended granting *brevis* disposition with respect to appellants' remaining claims. The district court agreed. This appeal followed.[4]

## II. ANALYSIS

CERCLA and SARA together create two different kinds of legal actions by which parties can recoup some or all of the costs associated with cleanups: cost recovery actions, *see* 42 U.S.C. § 9607(a), and contribution actions, *see id.* § 9613(f)(1). Cost recovery actions are subject to a six-year statute of limitations, *see id.* § 9613(g)(2), while contribution actions must be brought within half that time, *see id.* § 9613(g)(3).[5]

In this case appellants' cause of action, no matter how it is visualized, accrued no later than early 1987. *Compare id.* § 9613(g)(2)(B) (providing that the trigger date for a cost recovery action is fixed by the "initiation of physical on-site construction of the remedial action") with *id.* § 9613(g)(3)(B) (providing that the accrual period for contribution actions begins when a "judicially approved settlement" is entered). Here, the court entered the consent decree in March of

1986 and remedial construction apparently started at the Site within one year of that event. Appellants brought suit roughly five and one-half years thereafter. Thus, the sole question presented on appeal is whether appellants' action is an action for cost recovery or one for contribution. If appellants' action qualifies under the former rubric, it is timely; but, if it is properly classified under the latter rubric, it comes too late.

Because the issue on appeal turns on the correct interpretation of the relevant statutory provisions, we exercise *de novo* review. *See United States v. Gifford,* 17 F.3d 462, 472 (1st Cir.1994) (holding that questions of law engender plenary appellate review); *Liberty Mut. Ins. Co. v. Commercial Union Ins. Co.,* 978 F.2d 750, 757 (1st Cir.1992) (same).

### A. *The Contours of Contribution.*

Four portions of the statute are of immediately obvious relevance. The only one of the four found in the original CERCLA legislation is 42 U.S.C. § 9607(a)(4). This proviso makes enumerated parties "liable for ... all costs of removal or remedial action incurred by [government entities and] any other necessary costs of response incurred by any other person consistent with the national contingency plan." The other three provisions originated in SARA and are all codified within 42 U.S.C. § 9613. Under 42 U.S.C. § 9613(f)(1), "[a]ny person may seek contribution from any other person who is liable or potentially liable" for response costs. The same section contains two statutes of limitations. One provides that an action for cost recovery must be commenced within six years of the accrual date.[6] *Id.* § 9613(g)(2). The other provides that "[n]o action for contribution for any response costs or damages may be commenced more than 3 years after ... the date of ... entry of a judicially

---

4. When Browning sought summary judgment, all the remaining defendants followed suit. They ultimately achieved an identical result. This proceeding embraces the district court's grant of summary judgment in favor of all defendants. For ease in reference we treat the appeal as if Browning alone were the appellee, but our resolution of it applies with full force to all the other appellees.

5. We set out the text of the centrally relevant statutes, 42 U.S.C. §§ 9607(a), 9613(f) & 9613(g), in an appendix hereto.

6. This subsection speaks in terms "of the costs referred to in [section 9607]." 42 U.S.C. § 9613(g)(2).

approved settlement with respect to such costs or damages." *Id.* § 9613(g)(3).

 It is apodictic that our first recourse must be to the statute's text and structure. *See United States v. O'Neil,* 11 F.3d 292, 295 (1st Cir.1993); *United States v. Charles George Trucking Co.,* 823 F.2d 685, 688 (1st Cir.1987). Following this path, it is evident that CERCLA differentiates between "action[s] for recovery of ... costs" and "action[s] for contribution." *Compare* 42 U.S.C. § 9613(g)(2) *with id.* § 9613(g)(3). Although Congress did not explicitly plot the boundary that divides these two types of actions, we are not wholly without guidance. Under accepted canons of construction, legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal meaning. *See Bradley v. United States,* 410 U.S. 605, 609, 93 S.Ct. 1151, 1154–55, 35 L.Ed.2d 528 (1973) (holding that "the law uses familiar legal expressions in their familiar legal sense") (citation omitted); *MCA, Inc. v. Wilson,* 677 F.2d 180, 186 (2d Cir.1981) (similar); *see also* 2A Norman J. Singer, *Sutherland Stat. Const.* § 47.30, at 262 (5th ed. 1992). This precept has special force when, as now, there is no persuasive evidence that Congress aspired to use a particular legal term in some unusual or unorthodox sense.

This canon measurably assists our effort to ascribe meaning to the word "contribution." Contribution is a standard legal term that enjoys a stable, well-known denotation. It refers to a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994); *accord Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 87–88, 101 S.Ct. 1571, 1578–79, 67 L.Ed.2d 750 (1981); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 204, 207 (2d Cir.1987); *see also Black's Law Dictionary* 399 (6th ed. 1990) (defining contribution as a right "of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear").[7] Accordingly, absent evidence that Congress had a different, more exotic definition in mind, we are inclined, in parsing 42 U.S.C. § 9613, to give the word "contribution" its generally accepted legal meaning.

The relevant external considerations counsel in favor of this usage and, thus, solidify our inclination. Perhaps most important, ascribing a traditional meaning to the term "contribution" fits both CERCLA's language and its structure. Under such a reading, the two statutes of limitations complement each other and together exhaust the types of actions that might be brought to recoup response costs: the shorter prescriptive period, contained in 42 U.S.C. § 9613(g)(3), governs actions brought by liable parties during or following a civil action under 42 U.S.C. §§ 9606–9607(a), while the longer statute of limitations, contained in 42 U.S.C. § 9613(g)(2), addresses actions brought by innocent parties that have undertaken cleanups (say, the federal, state or local government).[8]

---

7. Most states have adopted contribution provisions that operate along substantially similar lexicographical lines. *See Northwest Airlines,* 451 U.S. at 87 n. 17, 101 S.Ct. at 1578–79 n. 17 (collecting exemplars). This is an important datum because CERCLA's legislative history evinces an intent that courts establish the scope and nature of CERCLA liability consistent with evolving principles of law. *See, e.g.,* 126 Cong.Rec. 30,932 (1980) (statement of Sen. Randolph); 126 Cong.Rec. 31, 965 (1980) (statement of Rep. Florio).

8. It is possible that, although falling outside the statutory parameters established for an express cause of action for contribution, *see* 42 U.S.C. § 9613(f)(1), a PRP who spontaneously initiates a cleanup without governmental prodding might be able to pursue an implied right of action for contribution under 42 U.S.C. § 9607(c). *See Key Tronic Corp. v. United States,* —— U.S. ——, ——, 114 S.Ct. 1960, 1966, 128 L.Ed.2d 797 (1994) (explaining that CERCLA now "expressly authorizes a cause of action for contribution in [§ 9613] and impliedly authorizes a similar and somewhat overlapping remedy in [§ 9607]"); *cf. In re Hemingway Transp., Inc.,* 993 F.2d 915, 931 (1st Cir.) (stating in dictum that "in the event the private-action plaintiff itself is potentially 'liable' to the EPA for response costs, and thus is akin to a joint 'tortfeasor,' section 9607(a)(4)(B) serves as the *pre-enforcement* analog to the 'impleader' contribution action permitted under section 9613(f)"), *cert. denied,* —— U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993). If, indeed, the law allows such an implied right of action for contribution to be maintained—a matter on which we take no view—it is unclear to us whether such a

This reading fits especially well with the language of 42 U.S.C. § 9613(g)(2), which concerns actions for "recovery of the costs." That phrase, reiterative of the subsection heading "Actions for recovery of costs," suggests full recovery; and it is sensible to assume that Congress intended only innocent parties—not parties who were themselves liable—to be permitted to recoup the whole of their expenditures. By contrast, 42 U.S.C. § 9613(g)(3) allows a "non-innocent" party (*i.e.*, a party who himself is liable) only to seek recoupment of that portion of his expenditures which exceeds his *pro rata* share of the overall liability—in other words, to seek contribution rather than complete indemnity. The statutory language thus suggests that cost recovery and contribution actions are distinct and do not overlap.

The pre-SARA caselaw and SARA's legislative history dovetail to furnish strong support for imputing a traditional meaning to the term "contribution" as it appears in 42 U.S.C. § 9613. As originally written, CERCLA gave the EPA several remedial choices. For example, it could (1) clean up a contaminated site and then sue to recover its response costs, *see id.* § 9607(a)(4), (2) endeavor to compel a PRP to perform a cleanup by administrative order, or, if the PRP proved recalcitrant, by obtaining a judicial decree, *see id.* § 9606, or (3) negotiate a settlement, *see id.* § 9622. Despite this array of weapons, however, CERCLA was—and still is—silent as to the extent of a particular PRP's liability. Judges abhor vacuums; and the courts filled this lacuna in the statute, reading CERCLA as imposing joint and several liability on the part of all responsible parties to reimburse the government for cleanup expenses and to pay response costs. *See, e.g., In re Hemingway Transp., Inc.,* 993 F.2d 915, 921 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993); *O'Neil v. Picillo,* 883 F.2d 176, 178 (1st Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990).

Notwithstanding the presumed existence of joint and several liability, there was much uncertainty prior to SARA's passage as to whether a responsible party could recover from other PRPs the portion of its cleanup costs that exceeded its *pro rata* share. *See, e.g., United States v. New Castle County,* 642 F.Supp. 1258, 1262 (D.Del.1986) (noting uncertainty). Although most courts ultimately ruled that section 9607 conferred an implied right of action for contribution in favor of a PRP that paid more than its ratable share, *see, e.g., O'Neil,* 883 F.2d at 179; *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1457 n. 3 (9th Cir.1986), the situation was clouded by the Court's refusal to imply rights of action under other statutes in the absence of an express direction from Congress, *see, e.g., Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639–40, 101 S.Ct. 2061, 2066–67, 68 L.Ed.2d 500 (1981) (declining to imply right of action for contribution under the antitrust laws); *Northwest Airlines,* 451 U.S. at 91–95, 101 S.Ct. at 1580–83 (finding no implied right to contribution under either the Equal Pay Act of 1963 or Title VII of the Civil Rights Act of 1964).

This background brings the origins of SARA into sharp focus. A principal goal of the new section 9613 was to "clarif[y] and confirm[ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." S.Rep. No. 11, 99th Cong., 1st Sess. 44 (1985), *reprinted in 2 Legislative History of the Superfund Amendments and Reauthorization Act of 1986,* 636, Sp. Print 101–120 (101st Cong., 2d Sess.) (1990); *see also* 131 Cong.Rec. 24,450 (1985) (statement of Sen. Stafford) (predicting that section 9613 would "remove[ ] any doubt as to the right of contribution"). Of paramount significance for present purposes is that Congress, in enacting SARA, sought to codify the case law, *see O'Neil,* 883 F.2d at 179—and the cases decided to that point, without exception, employed the legal term "contribution" in its traditional sense to cover an action by one liable party against another

---

cause of action would be subject to the three-year or the six-year prescriptive period. Because this

appeal does not pose that question, we leave it for another day.

liable party. *See, e.g., Bulk Distrib. Ctrs., Inc. v. Monsanto Co.,* 589 F.Supp. 1437, 1442–44 (S.D.Fla.1984); *Jones v. Inmont Corp.,* 584 F.Supp. 1425, 1428–29 (S.D.Ohio 1984).

Taken in the aggregate, this impressive collection of signposts—canons of construction, other CERCLA language, the statute's structure, the state of the case law antedating SARA's passage, and SARA's legislative history—point squarely to a conclusion that Congress used the word "contribution" in the conventional sense, and fully intended courts to give the word its customary meaning. The authorities so hold. *See Akzo Coatings,* 30 F.3d at 766; *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 672 (5th Cir.1989); *Avnet, Inc. v. Allied–Signal, Inc.,* 825 F.Supp. 1132, 1137–38 (D.R.I.1992); *Transtech Indus., Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1086 (D.N.J.1992), *appeal dism'd,* 5 F.3d 51 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994); *see also Key Tronic Corp. v. United States,* —— U.S. ——, —— ─ ——, 114 S.Ct. 1960, 1965–66, 128 L.Ed.2d 797 (1994) (observing that section 9613(f) expressly created a cause of action permitting a responsible party to seek contribution from other PRPs).

Applying this legal regime to the facts at hand, and bearing in mind that appellants are by their own admission liable parties, their claim against Browning must be classified as an action for contribution. Hence, unless the claim can otherwise be saved, it will fall prey to the three-year bar of 42 U.S.C. § 9613(g)(3).

### B. *The Statutory Interface.*

Appellants argue that, notwithstanding section 9613(f)(3), the broad, unqualified language to the effect that responsible parties shall be liable to "any other person," 42 U.S.C. § 9607(a)(4), provides an alternative avenue for the maintenance of their suit. If this is so, appellants add, the six-year statute

of limitations found in section 9613(g)(2), pertaining to actions for "recovery of the costs referred to in [§] 9607" must govern in this instance.

■ At face value, this expansive reading of section 9607 is untenable; carried to its logical extreme, such a reading would completely swallow section 9613(g)(3)'s three-year statute of limitations associated with actions for contribution. Since courts must strive to give effect to each subsection contained in a statute, indeed, to give effect to each word and phrase, *see United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 751–52 (1st Cir.1985), we refuse to follow a course that ineluctably produces judicial nullification of an entire SARA subsection.

Recognizing this looming obstacle, appellants attempt to skirt it by lowering their sights and, thus, preserving some semblance of utility for 42 U.S.C. § 9613(g)(3). In this vein, they focus on the phrase "incurred by," as used in 42 U.S.C. § 9607(a), and asseverate, based on this language, that section 9607(a) only covers actions to recoup cleanup costs directly paid for (*i.e.,* "incurred") by a responsible party (what we have termed first-instance costs, *see supra* p. 97). If this construction were adopted, then an action for recoupment of sums paid by a responsible party to a government agency to compensate it, pursuant to a settlement or judgment, for the funds it expended in cleaning up a site (what we have termed reimbursed costs, *see supra* p. 97), would lie under section 9613(f), but not under section 9607(a). Hence, section 9613(g)(3) would retain some measure of vitality, for an action by a responsible party against other PRPs to recover that portion of the reimbursed costs paid by the former in excess of its *pro rata* share would constitute a contribution claim, subject to the three-year prescriptive period.[9]

9. As an example, appellants suggest that an attempt to recover some part of the $475,000 payment they made to compensate the EPA and Maine for the latters' cleanup expenditures would be subject to the three-year limitations

period, while an attempt to recover a portion of the response costs ($13,000,000 to date) paid directly by appellants could be brought under section 9607(a) and come within the six-year limitations period.

We are not persuaded by this sleight of hand. For one thing, appellants' reading depends on excerpting phrases from section 9607(a) without due regard for the statute's overall content. The full text of the relevant subsection, reproduced in the appendix *infra*, makes selected parties liable for "any other necessary costs of response incurred by any other person." This unqualifiedly broad language comfortably accommodates all response costs incurred by a private party, not just first-instance costs. In a nutshell, accepting appellants' position would require us to read section 9607's language ("any other necessary costs") as containing an implicit qualification: "except for monies paid to reimburse government entities' cleanup costs." There is simply no rhyme or reason for reading that condition into what appears on its face to be a straightforward statutory directive. *See, e.g., CIA v. Sims,* 471 U.S. 159, 169–70, 105 S.Ct. 1881, 1887–88, 85 L.Ed.2d 173 (1985) (refusing to read limitations into broad and unconditional statutory language). Under the reading that we adopt, by contrast, the unqualified language "any other necessary costs" remains as Congress wrote it, that is, without qualification.[10] We think that this reading is preferable.

For another thing, appellants' tracing of the statutory interface is wholly dependent on an unusually cramped reading of the term "contribution." Under appellants' theory, the term refers only to reimbursed costs. This artificial circumscription entirely omits from the sweep of section 9613 what might be called "traditional" contribution actions. We know of no other court that has given such an odd definition to the term "contribution" in this—or any other—context; and, though we recognize that we are not bound to interpret the word as it is defined by state law, *see* 42 U.S.C. § 9613(f)(1) (providing that claims for contribution "shall be governed by Federal law"), the responsibility to develop federal common law is not a license to override policy choices made by the Congress or to create newfangled definitions for no better reason than that they suit a party's convenience or strike a judge's fancy. The meaning to be attributed to terms governed by

federal law must, at the very least, comport with the statutory scheme in which such terms appear, and, wherever possible, effectuate discernible congressional intent. Put bluntly, a court cannot rewrite a statute by the simple expedient of calling a camel a horse, overlooking obvious humps.

Appellants' suggested interpretation fails this commonsense test on two grounds. First, 42 U.S.C. § 9613 itself appears to reject any distinction for the purposes of contribution between first-instance costs and reimbursed costs. After all, subsection 9613(f)(3)(B) authorizes a party to seek contribution "for some or all of the response action or for some or all of the costs of such action ..." The simple reading of this subsection is that the initial phrase refers to expenses incurred in the course of a liable party's direction of a site's cleanup while the second phrase refers to reimbursement of cleanup costs incurred under the government's hegemony.

The legislative history confirms this explanation. In formulating SARA, the Senate Committee on Environment and Public Works viewed what is now section 9613(f) as intended to permit an action for contribution when a party believed that it had "assumed a share of the cleanup or cost that may be greater than its equitable share." S.Rep. No. 11, *supra.* By like token, the House Committee on Energy and Commerce stated that contribution could be had under section 9613(f) by parties "who settle for all or part of a cleanup or its costs ..." H.R.Rep. No. 253, pt. 1, 99th Cong., 2d Sess. 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2862. These statements show beyond serious question that the drafters intended contribution, as that term is used in section 9613, to cover parties' disproportionate payments of first-instance costs as well as parties' disproportionate payments of reimbursed costs.

Second, appellants' construction emasculates the contribution protection component of CERCLA's settlement framework. CERCLA seeks to provide EPA with the necessary tools to achieve prompt cleanups.

10. As discussed above, *see supra* p. 100, 42 U.S.C. § 9613(f)(1) explicitly confirms the cause of action for contribution that is implicit in the language of § 9607(a).

*See United States v. Cannons Engineering Corp.*, 899 F.2d 79, 90–91 (1st Cir.1990). One such tool is the ability to foster incentives for timely settlements. *See id.* To this end, 42 U.S.C. § 9613(f)(2) provides that a party who settles with the government "shall not be liable for claims for contribution regarding matters addressed in the settlement." Because only the amount of the settlement, not the *pro rata* share attributable to the settling party, is subtracted from the aggregate liability of the nonsettling parties, *see id.*, section 9613(f)(2) envisions that nonsettling parties may bear disproportionate liability. This paradigm is not a scrivener's accident. It "was designed to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle." *Cannons Engineering*, 899 F.2d at 92; *see also* H.R.Rep. No. 253, *supra*, 1986 U.S.C.C.A.N. at 2862.

This mechanism for encouraging settlement would be gutted were courts to share appellants' view of the contribution universe, for subsection 9613(f)(2) then would afford very little protection. Although the subsection still would prevent a settlor from being sued by another responsible party claiming that the first settlor paid less than its ratable share *of the government's expenses* (what we have termed "reimbursed costs"), the statutory shield would not extend beyond that point. Most disturbingly, if a party's direct, first-instance payments are not grist for the contribution mill, but, instead, are to be treated as recovery costs within the purview of section 9607(a), a nonsettling or later-settling PRP would be entitled to bring an action against a responsible party who settled at the earliest practicable moment, but paid less than his ratable share of the aggregate first-instance payments. Exposing early settlors who make first-instance payments to later contribution actions not only would create a needless asymmetry in the treatment of first-instance costs as opposed to reimbursed costs, but also would greatly diminish the incentive for parties to reach early settlements with the government, thereby thwarting Congress's discernible intent.[11] This result makes little sense, and, therefore, we reject appellants' tortured construction of the statutory language.

## III. CONCLUSION

The word "contribution" for purposes of 42 U.S.C. § 9613(f) should be given its plain meaning. Adapted to an environmental case, it refers to an action by a responsible party to recover from another responsible party that portion of its costs that are in excess of its *pro rata* share of the aggregate response costs (including both first-instance costs and reimbursed costs). Applying this definition, the instant action clearly qualifies as an action for contribution under section 9613(f)(1). And because CERCLA's text indicates that contribution and cost recovery actions are distinct, non-overlapping anodynes,[12] the action had to be commenced within three years of its accrual. *See* 42 U.S.C. § 9613(g)(3).

We need go no further. Appellants did not deign to sue until some six and one-half years after entry of the consent decree. Their suit is, therefore, time-barred.[13]

*Affirmed.*

---

**11.** It bears mention that CERCLA's contribution protection provisions also would be undermined if cost recovery actions were deemed to be overlapping with contribution actions.

**12.** Envisioning contribution and cost recovery actions as nonoverlapping is perfectly consistent with the Court's recent determination that 42 U.S.C. §§ 9613 and 9707(a) create "similar and somewhat overlapping" actions for contribution. *Key Tronic*, — U.S. at —, 114 S.Ct. at 1966. The *Key Tronic* Court was discussing two different species of contribution actions and expressed no views anent the relation between contribution and cost recovery actions.

**13.** The court below reached the same result based on somewhat different reasoning. While its rationale strikes us as problematic, we see little point in tilting at windmills. An appellate court is not chained to the lower court's reasoning, but may affirm the judgment below on any independently sufficient basis made manifest by the record. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir.1990); *Polyplastics, Inc. v. Transconex, Inc.*, 827 F.2d 859, 860–61 (1st Cir. 1987). Thus, we endorse the result reached below solely for the reasons stated herein.

APPENDIX

## IV. STATUTORY APPENDIX

### § 9607. Liability

**(a) Covered persons; scope; recoverable costs and damages; interest rate; "comparable maturity" date**

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and

(D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

### § 9613. Civil proceedings

**(f) Contribution**

**(1) Contribution**

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.

**(2) Settlement**

A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it

reduces the potential liability of the others by the amount of the settlement.

### (3) Persons not party to settlement

(A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settlement, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed by Federal law.

### (g) Period in which action may be brought

#### (1) Actions for natural resources damages

Except as provided in paragraphs (3) and (4), no action may be commenced for damages (as defined in section 9601(6) of this title, unless that action is commenced within 3 years after the later of the following:

(A) The date of the discovery of the loss and its connection with the release in question.

(B) The date on which regulations are promulgated under section 9651(c) of this title.

With respect to any facility listed on the National Priorities List (NPL), any Federal facility identified under section 9620 of this title (relating to Federal facilities), or any vessel or facility at which a remedial action under this chapter is otherwise scheduled, an action for damages under this chapter must be commenced within 3 years after the completion of the remedial action (excluding operation and maintenance activities) in lieu of the dates referred to in subparagraph (A) or (B). In no event may an action for damages under this chapter with respect to such a vessel or facility be commenced (i) prior to 60 days after the Federal or State natural resource trustee provides to the President and the potentially responsible party a notice of intent to file suit, or (ii) before selection of the remedial action if the President is diligently proceeding with a remedial investigation and feasibility study under section 9604(b) of this title or section 9620 of this title (relating to Federal facilities). The limitation in the preceding sentence on commencing an action before giving notice or before selection of the remedial action does not apply to actions filed on or before October 17, 1986.

#### (2) Actions for recovery of costs

An initial action for recovery of the costs referred to in section 9607 of this title must be commenced—

(A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and

(B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after

the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

### (3) Contribution

No action for contribution for any response costs or damages may be commenced more than 3 years after—

(A) the date of judgment in any action under this chapter for recovery of such costs or damages, or

(B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

### (4) Subrogation

No action based on rights subrogated pursuant to this section by reason of payment of a claim may be commenced under this subchapter more than 3 years after the date of payment of such claim.

### (5) Actions to recover indemnification payments

Notwithstanding any other provision of this subsection, where a payment pursuant to an indemnification agreement with a response action contractor is made under section 9619 of this title, an action under section 9607 of this title for recovery of such indemnification payment from a potentially responsible party may be brought at any time before the expiration of 3 years from the date on which such payment is made.

### (6) Minors and incompetents

The time limitations contained herein shall not begin to run—

(A) against a minor until the earlier of the date when such minor reaches 18 years of age or the date on which a legal representative is duly appointed for such minor, or

(B) against an incompetent person until the earlier of the date on which such incompetent's incompetency ends or the date on which a legal representative is duly appointed for such incompetent.