**HYDRO–MANUFACTURING, INC., Plaintiff**

v.

**KAYSER–ROTH CORPORATION, Defendant.**

Civ. A. No. 94–560B.

United States District Court, D. Rhode Island.

Nov. 3, 1995.

William G. Grande, Jr., Providence, RI, Haig Barsamian, Providence, RI, for Plaintiff.

Deming E. Sherman, Edwards & Angell, Providence, RI, for Defendant.

## *OPINION*

FRANCIS J. BOYLE, Senior District Judge.

Defendant, Kayser–Roth Corporation ("Kayser–Roth",) moved to dismiss plaintiff's, Hydro–Manufacturing, Inc. ("Hydro"), complaint pursuant to Fed.R.Civ.P. 12(b)(6). The Court holds that Plaintiff's cause of action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675 (1995), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, § 101 *et seq.*, 100 Stat. 1613 (1986), is for contribution, and must be dismissed because it is time-barred.

## *I. BACKGROUND*

The origin of this litigation is the former site of Stamina Mills ("site"), located north of the Branch River in North Smithfield, Rhode Island. In 1979, the Rhode Island Department of Health began investigating the contamination of wells surrounding the site due to a release of trichloroethylene ("TCE") into the ground. In 1982, the United States Environmental Protection Agency ("EPA") conducted a study of the area and substantiated that contamination existed in adjacent residential wells.

Ownership of the site changed twice between the TCE spill in 1969 and the EPA study in 1982. Stamina Mills, Inc. ("Stamina"), originally owned the site, and sold it to Roger Meunier in 1976.[1] In 1981, Meunier deeded the site to the plaintiffs, Hydro.

In accordance with CERCLA, the United States brought suit against Hydro, the then owner, and Kayser–Roth, the owner and operator of the site at the time of contamination, to recover the past and future costs in connection with the clean up of the site. The United States and Hydro settled by entering into a Partial Consent Decree which was approved on January 18, 1990.

In accordance with the Consent Decree, Hydro agreed to sell the site, subject to the approval of the EPA and pay the net proceeds to the EPA. Hydro also agreed to be responsible for all costs associated with land maintenance, including real estate taxes and sewer assessments until the sale of the site. In the meantime, Kayser–Roth went to trial and judgment entered against it. Kayser–Roth was required to reimburse the United States and execute remedial steps at the site. For a fuller recitation of this aspect, the reader may refer to *Hydro–Manufacturing v. Kayser–Roth*, 640 A.2d 950, 952–953 (R.I. 1994) and *U.S. v. Kayser–Roth Corp.*, 724 F.Supp. 15, 17–18 (D.R.I.1989), *aff'd.*, 910 F.2d 24 (1st Cir.1990), *cert. denied*, 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991).

## *II. PROCEDURAL HISTORY*

No one likes to clean up a mess, much less pay the cost of it, and the parties in this action are no exception; their protracted and lengthy litigation proves it. Hydro first filed in state court against Defendant, alleging several state law claims, seeking recovery of the costs paid to the United States pursuant to the Decree. Summary judgment was entered for the defendant, with the suggestion that Hydro may have a claim under CERCLA. *Hydro*, 640 A.2d at 957. In response, Hydro brought an identical complaint in this Court on October 20, 1994, with an additional count for unjust enrichment. Kayser–Roth moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1)(6). A Magistrate Judge recommended that the motion to dismiss be granted. The recommendation was adopted and the motion to dismiss was granted. Hydro was allowed to file an amended complaint.

In this action, Plaintiff seeks reimbursement for costs and contribution pursuant to

---

1. In 1961, Crown Textile Manufacturing Company ("Crown") and Samuel M. Staymen each owned 50% of the shares of Stamina Mills, Inc. Crown merged into Colonial Corporation of America ("Colonial"). In 1965, Colonial acquired Staymen's shares in the mill and became the sole stockholder of Stamina Mill. The next year Colonial merged with Kayser–Roth. Kayser–Roth emerged as the owner of the capital stock in Stamina Mills until its dissolution in 1977. Kayser–Roth remains responsible for all liabilities and assets of the now defunct Stamina Mills.

CERCLA, §§ 9607(a)(2)(B) and 9613(f). (Amended Compl. ¶¶ 30 and 31.) More specifically, Hydro seeks "all damages sustained by it, including, without limitation, the value of said real estate would have if it had not been contaminated as aforesaid, legal fees and costs incurred in defending the suit brought by the United States ... together with the real estate taxes paid or due ... and punitive damages to which the Plaintiff may be entitled, plus interest and costs." (Amended Compl. at 9.) The defendant filed the instant motion to dismiss, arguing that the amended complaint was not brought before the expiration of the appropriate statute of limitations under CERCLA, § 9613(g)(3), and the damages sought are not recoverable as response costs under CERCLA.

### III. DISCUSSION

#### A. Fed.R.Civ.P. 12(b)(6) Standard

A civil complaint seeking money damages should not be dismissed for failure to state an actionable claim unless it plainly appears that the plaintiff can prove no set of facts which would entitle it to recover. *See Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44 (1st Cir.1991), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In considering a Rule 12(b)(6) motion, "the court must accept the well-pleaded factual averments of the ... complaint as true, and construe these facts in a light most flattering to the [plaintiff's] case...." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988), *quoting Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987).

#### B. Defining a Contribution Action

■ The pivotal issue in this case is whether Hydro's claim for money damages falls under the rubric of an action for contribution or whether it is more accurately an action for recovery of costs. Hydro claims that it is seeking cost recovery pursuant to § 9607(a)(4) of CERCLA, while Kayser–Roth contends that the plaintiff can only seek compensation through contribution under § 9613(f)(1) of CERCLA.

Kayser–Roth argues that as an action for contribution, the plaintiff's claim is time barred because the applicable statute of limitations is three years. CERCLA provides that the trigger for contribution actions is when a "judicially approved settlement" is entered. § 9613(g)(3)(B). The Consent Decree was entered on January 18, 1990. This action was brought on October 20, 1994, more than three years thereafter.

In contrast, there is a six year statute of limitations for recovery of cost actions, which begins upon "initiation of physical on-site construction of the remedial action." § 9613(g)(2)(B).

The First Circuit considered the basic issue in *United Technologies Corp. v. Browning–Ferris Industries*, 33 F.3d 96 (1st Cir. 1994), *cert. denied* — U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995). *United Technologies* involved nearly similar circumstances as those presently facing this Court. In response to difficulties with a landfill in Maine, the plaintiff satisfied its liability with the United States by entering into a Consent Decree. Six years later, the plaintiff sought recovery of response costs under CERCLA. The First Circuit affirmed the district court's determination that the plaintiff's action was one for contribution, not recovery of cost because the claim was between two responsible parties. *United Technologies*, 33 F.3d at 103. Other circuits have considered the identical question and are in accord with the First Circuit. *See United States v. Colorado & Eastern R. Co.*, 50 F.3d 1530, 1536 (10th Cir.1995); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir.1989).

The First Circuit pointed out that the two types of remedies are mutually exclusive and enacted for two separate aims. *United Technologies*, 33 F.3d at 100. The shorter statute of limitations for contributions claims governs the liable parties under § 9607(a), while the longer statute of limitations enables innocent parties to recover after voluntarily assuming clean up costs and duties. *Id.* at 99.

The First Circuit also described the parameters for a claim of contribution as a claim "by and between jointly and severally

liable parties for appropriate division of the payment one of them has been compelled to make." *Id., quoting Akzo Coatings, Inc.*, 30 F.3d at 764. In section 107, entitled "Liability", CERCLA lists the following persons as "covered": (1) owner or operator of facility; (2) any person who at the time of disposal owner or operated the facility; (3) any person who arranged for the disposal of wastes at the site; or (4) who transported the wastes to the site for disposal. § 9607(a)(1)–(4).

Accordingly, Hydro as the owner of the site, is a "covered" person and thus, liable under the statute. § 9607(a)(1). *See Northeast Doran, Inc. v. Key Bank of Maine*, 15 F.3d 1, 2 (1st Cir.1994); *See Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, 1280 (D.Del.1987) (CERCLA "applies to all current owners and operators regardless of whether they owned or operated a facility when hazardous substances were disposed"), *aff'd.*, 851 F.2d 643 (3d Cir.1988). Similarly, Kayser–Roth is a "covered" entity under the statute because it is the successor of the corporate owner at the time of the contamination. § 9607(a)(2). *See U.S. v. Kayser–Roth*, 910 F.2d at 26; *U.S. v. Kayser–Roth*, 724 F.Supp. at 23.

■ Hydro argues that it is an innocent party because it took no part in the contamination. It concludes that recovery of costs, not contribution, is the proper action. This proposition ignores the plain language and the purpose of CERCLA. The legislation is designed to impose strict liability on a variety of actors, including past and present owners, irrespective of their culpability, because the aim of CERCLA is to facilitate repair and clean up. *See In re Hemingway Transport, Inc.*, 993 F.2d 915, 921 (1st Cir. 1993) ("To foster CERCLA's primary objective—promotion of spontaneous private cleanup initiatives—all PRPs [potentially responsible party] are deemed strictly liable for the total response costs required to remediate the contaminated facility.") That Hydro may be blameless for the original contamination is irrelevant for purposes of CERCLA, because simply as owner of the site, Hydro bears partial responsibility for aiding clean up. *U.S. v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir.1988) ("traditional ele-

ments of tort culpability on which site-owners rely simply are absent from the statute [CERCLA] ... the plain language ... extends liability to owners of waste facilities regardless of their degree of participation"), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). The right to seek contribution under § 113(f) operates to ease the potential burdens such joint and several liability may create.

*United Technologies, supra*, is strongly instructive of the proper conclusion in this action. Hydro, like the plaintiff in *United Technologies*, did not spontaneously clean up the site; rather, it entered into a Consent Decree, agreeing to incur costs related to mending the tainted land. In effect, Hydro agreed to pay what the site was worth when it could sell it and bear the carrying costs in the meantime. The fact that Hydro agreed to the Consent Decree provides compelling evidence that Hydro recognized that it might be liable pursuant to § 9607(a)(1) and sought to expedite an inevitable outcome. Participation, even if reluctant, is implicit acknowledgment that Hydro may fall under the grasp of CERCLA liability.

There is nothing to indicate that Hydro ever attempted to argue an affirmative defense pursuant to § 9607(b). For example, § 9601(35)(A) and (B) provide an "innocent landowner" defense to CERCLA liability under § 9607(a) if Hydro could establish that (1) it acquired the facility after the initial deposit of the hazardous substances; (2) at the time of its acquisition, it did not know and had no reason to know that any hazardous substance was deposited at the facility; and (3) once the presence of the hazardous substance became known, Hydro exercised due care. *See In re Hemingway Transport*, 993 F.2d at 932; *See U.S. v. DiBiase*, 45 F.3d 541, 545 n. 4 (1st Cir.1995).

Hydro may argue that the Consent Decree indicates no liability, especially because it reads that "{t}he execution of this Consent Decree by the settling Defendant is not an admission of liability by it, or by its current shareholders ... with respect to any issue dealt with in the Consent Decree nor is it an admission or denial of the factual allegations set out in the Amended Complaint." (Partial Consent Decree at 4.) But despite Hydro's proclamations, it is Hydro's status as an own-

er, not the existence of a decree, which triggers strict liability. *See Ekotek Site PRP Committee v. Self,* 881 F.Supp. 1516, 1521 (D.Utah 1995) (claims between PRP parties are restricted to contribution under § 113(f)). *See Kaufman and Broad–South Bay v. Unisys Corp.,* 868 F.Supp. 1212, 1216 (N.D.Cal. 1994) ("the reality is that the vast majority of private parties will be limited to suing for contribution under § 9613(f) ... because CERCLA imposes liability on virtually every private party who would have reason to recoup cleanup costs") *See Transtech Industries, Inc. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1086 (D.N.J.1992) ("a claim against one liable party by a party who voluntary agreed to perform certain actions pursuant to a settlement agreement is still a claim for contribution"), *appeal dismissed,* 5 F.3d 51 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994).

## IV. CONCLUSION

Plaintiff may only proceed under § 9613(f) and such an action is time-barred. The claim seeking contribution was not commenced within three years of the entry of the Partial Consent Decree in this Court on January 18, 1990; therefore, Hydro's complaint is dismissed. Judgment will enter for Defendant for costs.