**NEW CASTLE COUNTY; Rhone-Poulenc, Inc., Zeneca, Inc.,
Appellants,**

v.

**HALLIBURTON NUS CORP.**

No. 96–7443.

United States Court of Appeals,
Third Circuit.

Argued March 11, 1997.

Decided May 2, 1997.

Rehearing Denied June 3, 1997.

M. Edward Danberg, Julie M. Sebring, New Castle Law Department, Wilmington, DE , for Appellant, The Government of New Castle County, Delaware.

George J. Weiner (argued), Patrick O. Cavanaugh, McCutchen, Doyle, Brown & Enersen, Washington, D.C., for Appellants.

Kenneth J. Warren (argued), Michael M. Meloy, John F. Gullace, Manko, Gold & Katcher, Bala Cynwyd, PA, Phebe S. Young, Bayard, Handelman & Murdoch, P.A., Wilmington, DE, for Appellee Halliburton NUS Corporation.

Daniel M. Steinway, Thomas C. Jackson, Kelley, Drye & Warren, Washington, D.C., for Amicus–Appellee The Hazardous Waste Action Coalition, Camp, Dresser & Mckee, Inc.; Ch2M Hill; Montgomery Watson, Inc.; And Sverdrup Environmental, Inc.

Lois J. Schiffer, Assistant Attorney General, Anne S. Almy, John T. Stahr, Department of Justice, Environment and Natural Resources Division, Washington, D.C. (Earl Salo, Alexander Schmandt, Office of General Counsel, United States Environmental Protection Agency, Washington, D.C., of counsel), for United States as Amicus Curiae in Partial Support of Appellee.

Before: MANSMANN and LEWIS, Circuit Judges, and DUPLANTIER, District Judge.*

* Honorable Adrian G. Duplantier of the United States District Court for the Eastern District of Louisiana, sitting by designation.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

We must decide whether a person who is potentially responsible for the clean-up of a hazardous waste site under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, may bring a cost recovery claim against other potentially responsible persons under CERCLA section 107(a)(4)(B), *id.* § 9607(a)(4)(B), separate from a contribution claim under section 113(f) of the Superfund Amendments and Reauthorization Act (SARA), *id.* § 9613(f). We conclude that a potentially responsible person may not bring a section 107 cost recovery claim against another potentially responsible person, and we will therefore affirm the judgment of the district court.

### I.

This appeal arises from efforts to clean up the Tybouts Corner Landfill, a hazardous substance site located in Delaware. In 1980, the United States filed suit against New Castle County, the owner and operator of the landfill, and against the predecessor of Rhone–Poulenc, Inc., who arranged for the disposal of hazardous substances at the landfill. The case was originally brought under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, but the complaint was amended in 1984 to add counts under CERCLA. The CERCLA counts sought to have the defendants conduct remedial action and reimburse the EPA for its response costs. The amended complaint also added as a defendant the predecessor of Zeneca, Inc., an arranger for disposal at the landfill.

On April 19, 1989, the EPA entered into a series of consent decrees with New Castle County, Rhone–Poulenc and Zeneca (collectively "New Castle") and others, requiring them to finance and implement remedial action at the landfill. Prior to entry of the consent decrees, the EPA contracted with Halliburton NUS Corporation ("NUS") to

perform a Remedial Investigation/Feasibility Study to determine appropriate response actions. As part of that determination, NUS installed several monitoring wells in areas where refuse had been placed during the landfill's operation. One of the wells, TY–311, was installed to assess the "Merchantville Formation," a clay strata separating a shallow formation containing groundwater impacted by landfill material and a formation containing groundwater used by New Castle County as drinking water. NUS reported that the Merchantville Formation was missing in the vicinity of TY–311.

According to New Castle, NUS improperly constructed well TY–311 such that (1) NUS' conclusion about the missing formation was incorrect and (2) NUS' construction of the well improperly opened a "window" between the two groundwater formations. New Castle learned of these alleged mistakes on the part of NUS in a report dated October 28, 1991. On October 26, 1993, New Castle filed this lawsuit against NUS. In Count II, New Castle asserted that NUS was liable under CERCLA section 107(a)(4)(B) for all or part of the response costs incurred by New Castle in connection with the landfill. Count I asserted common law negligence, and Count III asserted claims under Delaware environmental laws.

NUS moved for summary judgment as to Count II on the ground that it actually constituted a claim for *contribution* under CERCLA section 113(f)(1), and that the claim was therefore time-barred under section 113's three-year statute of limitations (unlike a section 107 *cost recovery* action, which is generally governed by a six-year statute of limitations).

The district court held that Count II constituted a claim for contribution under section 113. *New Castle County v. Halliburton NUS Corp.*, 903 F.Supp. 771, 780 (D.Del. 1995).[1] The court also determined that New Castle's cause of action accrued on the date of the consent decrees. *Id.* at 777.

---

1. The district court disagreed with the recommendation of the magistrate judge to deny NUS' motion on the ground that Count II properly

constituted a cost recovery claim under section 107 and was therefore timely.

The district court further concluded that the limitations period on New Castle's contribution action was not equitably tolled and thus expired three years after the consent decrees were entered. The court dismissed Count II with prejudice. *New Castle County v. Halliburton NUS Corp.*, No. 93–504–LON (D. Del. June 7, 1996). The court dismissed Counts I and III without prejudice to refiling them in state court. *Id.; see* 28 U.S.C. § 1367(c)(3). New Castle filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

CERCLA and SARA together create two different kinds of legal actions by which parties can recoup some or all of the costs associated with clean-ups: section 107 cost recovery actions, *see* 42 U.S.C. § 9607(a), and section 113 contribution actions, *see id.* § 9613(f)(1).

Section 107 of CERCLA provides that certain enumerated parties—"potentially responsible persons"—

shall be liable for ... all costs of removal or remedial action incurred by the United States Government ...; [and] any other necessary costs of response incurred by any other person consistent with the national contingency plan....

*Id.* § 9607(a).[2] Cost recovery actions are generally subject to a six-year statute of limitations. *Id.* § 9613(g)(2).

Section 113 of SARA provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [section 107], during or following any civil action under [section 107]." *Id.* § 9613(f)(1). "No action for contribution for

any response costs or damages may be commenced more than 3 years after ... the date of ... entry of a judicially approved settlement with respect to such costs or damages." *Id.* § 9613(g)(3).

The primary question in this appeal is whether New Castle's action against NUS is a cost recovery action or a contribution action. If it is a cost recovery action, it is timely; if it is a contribution action and we do not apply the discovery rule or equitable tolling, the action is not timely. We exercise plenary review over the district court's interpretation of the relevant CERCLA and SARA provisions.

■ Every court of appeals that has examined this issue has come to the same conclusion: a section 107 action brought for recovery of costs may be brought only by *innocent* parties that have undertaken clean-ups. An action brought by a potentially responsible person is by necessity a section 113 action for contribution. *See Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996); *United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530, 1536 (10th Cir.1995); *United Technologies Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96, 99 (1st Cir.1994); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994); *see also Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 672 (5th Cir.1989). We agree with the conclusion reached by our sister courts.

■ A section 107 cost recovery action imposes strict liability on potentially responsible persons for costs associated with haz-

---

**2.** We use the term "potentially responsible persons" to describe the four classes of persons CERCLA defines in section 107(a): the current owner or operator of a facility, 42 U.S.C. § 9607(a)(1); any person who owned or operated the facility "at the time of disposal of any hazardous substance," *id.* § 9607(a)(2); any person who arranged for transport for disposal or treatment, or arranged for transport for disposal or treatment of hazardous substances at the facility, *id.* § 9607(a)(3); and any person who accepts or accepted hazardous substances for transport to sites selected by such person, *id.* § 9607(a)(4). A person who can successfully es-

tablish a defense under section 107(b), *id.* § 9607(b), is not a potentially responsible person. *See id.* § 9601(35); *United States v. CDMG Realty Co.*, 96 F.3d 706, 721 (3d Cir.1996) (discussing "innocent owner defense"); H.R. Conf. Rep. No. 99–962, at 186–88 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3276, 3279–81 (same).

The "national contingency plan" is a set of regulations promulgated by the EPA that establishes procedures and standards for responding to releases of hazardous substances, pollutants and contaminants. 42 U.S.C. § 9605; *see* 40 C.F.R. Part 300 (1995).

ardous waste clean-up and site remediation. United *States v. Alcan Aluminum Corp.*, 964 F.2d 252, 259 (3d Cir.1992); *see also United States v. CDMG Realty Co.*, 96 F.3d 706, 712 (3d Cir.1996); *Colorado & Eastern*, 50 F.3d at 1535 ("it is now well settled that § 107 imposes strict liability on [potentially responsible persons]"); *Tippins Inc. v. USX Corp.*, 37 F.3d 87, 92 (3d Cir.1994); H.R.Rep. No. 99–253(I), at 74 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2835, 2856 ("liability under CERCLA is strict, that is, without regard to fault or willfulness").[3]

▇▇▇ In general, a section 107 cost recovery action also imposes joint and several liability on potentially responsible persons. *Alcan Aluminum*, 964 F.2d at.268; *see also Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1240 (7th Cir. 1997); *Colorado & Eastern*, 50 F.3d at 1535 ("It is also well settled that § 107 imposes joint and several liability on [potentially responsible persons] regardless of fault."); *United Technologies*, 33 F.3d at 100 (recognizing "presumed existence of joint and several liability"); *United States v. Rohm & Haas Co.*, 2 F.3d 1265, 1280 (3d Cir.1993).[4]

If New Castle is correct, a potentially responsible person found liable under section 107 could bring a section 107 action against another potentially responsible person and could recoup *all* of its expenditures regardless of fault.[5] This strains logic. "[I]t is sensible to assume that Congress intended only innocent parties—not parties who were themselves liable—to be permitted to recoup the whole of their expenditures." *United Technologies*, 33 F.3d at 100.

▇▇▇ In contrast, the term "contribution" is a standard legal term that refers to a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." *Id.* at 99 (quoting *Akzo Coatings*, 30 F.3d at 764). To resolve contribution claims, section 113 provides that "the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1); *see also Rumpke of Indiana*, 107 F.3d at 1240 (section 113 allocates fault among potentially responsible persons); *Colorado & Eastern*, 50 F.3d at 1536 & n. 5 (discussing equitable factors to be considered

3. Section 119 of SARA provides that a "response action contractor" ("RAC") cannot be liable under CERCLA for any damage resulting from a release of hazardous substances unless the release is caused by the RAC's negligence, gross negligence, or intentional misconduct. 42 U.S.C. § 9619(a). NUS is a RAC; we assume for the purpose of this appeal that NUS negligently caused the release of hazardous substances.

4. A section 107 defendant may seek apportionment where there is a reasonable basis for determining the contribution of each cause to a single harm. *Rohm & Haas*, 2 F.3d at 1280 (citing Restatement (Second) of Torts § 433A). It is the defendant's burden to prove that the harm is divisible and that the damages are capable of some reasonable apportionment. *Id.; see also Alcan Aluminum*, 964 F.2d at 268–69; H.R.Rep. No. 99–253(I) (1985), at 74, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2856. New Castle did not seek to apportion its liability when it was sued by the United States, and it does not contend that the harm at the landfill is divisible, so this exception to pure joint and several liability is not applicable here. *See Colorado & Eastern*, 50 F.3d at 1535 ("responsible parties rarely escape joint and several liability").

Amicus Hazardous Waste Action Coalition ("HWAC") argues that NUS, as a RAC under

section 119, should not be subject to the possibility of joint and several liability. HWAC contends that NUS is *per se* not covered by section 107. New Castle counters that, for the purposes of summary judgment, there is no dispute that NUS was a potentially responsible person under section 107. New Castle admits that RACs cannot be strictly liable pursuant to section 119, but argues that RACs may be jointly and severally liable under section 107.

While it may be true that placing RACs in danger of paying for an entire clean-up may chill the process of identifying and cleaning up hazardous sites, we are not prepared to state unequivocally that a RAC can never be a potentially responsible person subject to joint and several liability.

5. At oral argument, New Castle suggested that it is seeking to recover from NUS more than NUS' fair share:

THE COURT: The most you can recover is the damages that resulted from [NUS'] negligence.

NEW CASTLE: Not necessarily, your Honor. In addition, in its responses to NUS' interrogatories, New Castle contends that "NUS is liable to [New Castle] with respect to *all* [costs incurred by New Castle in discharging New Castle's obligations under the consent decrees]." App. 123 (emphasis supplied).

when resolving section 113 claims).[6]

In other words, while a potentially responsible person should not be permitted to recover all of its costs from another potentially responsible person, the person should be able to recoup that portion of its expenditures which exceeds its fair share of the overall liability. Section 113 provides potentially responsible persons with the appropriate vehicle for such recovery. *See CDMG Realty*, 96 F.3d at 712 (individual liable under section 107 may seek contribution from other parties pursuant to section 113); *Tippins*, 37 F.3d at 92 (same).

██ Thus, section 113 does not in itself create any new liabilities; rather, it confirms the right of a potentially responsible person under section 107 to obtain contribution from other potentially responsible persons. Bancamerica Commercial Corp. v. Mosher Steel of Kansas, *Inc.*, 100 F.3d 792, 800 (10th Cir. 1996).

Our analysis finds support in the background and legislative history of SARA. Prior to the passage of SARA (and before the existence of section 113), it was not clear whether a potentially responsible person under section 107 could recover from other potentially responsible persons that portion of its clean-up costs that exceeded its fair share. *See, e.g., United States v. New Castle County*, 642 F.Supp. 1258 (D.Del.1986). Courts responded to this uncertainty by recognizing an implicit cause of action for contribution where persons have been subject to joint and several liability and have incurred costs in excess of their fair share. *Colorado & Eastern*, 50 F.3d at 1535.

Congress codified this right when it created section 113. A principal goal of section 113 was to "clarif[y] and confirm[ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." H.R.Rep. No. 99–253(I), at 79 (1985), *reprint-*

ed *in* 1986 U.S.C.C.A.N. 2835, 2861; H.R. Conf. Rep. No. 99–962, at 221 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3276, 3314.

Thus, prior to the passage of SARA and section 113, section 107 potentially responsible persons were required to rely upon an uncertain common law right of contribution. It was only upon passage of section 113 that these persons had a clear, statutory right to seek an equitable division of clean-up costs. The history and language of section 113 lend support to our conclusion that it, and not section 107, is the appropriate mechanism for obtaining a fair allocation of responsibility between two or more potentially responsible persons.

New Castle observes that section 107 provides that a potentially responsible person shall be liable for costs incurred by "any . . . person," 42 U.S.C., § 9607(a)(4)(B), and that the section is not expressly limited to innocent parties. In *Akzo Coatings*, the Court of Appeals for the Seventh Circuit recognized that while section 107 permits recovery by any person, the "person" must experience an injury of the type giving rise to a claim under section 107 to obtain relief under that section. 30 F.3d at 764. Since section 107 was designed to enable innocent persons who incur expenses cleaning up a site to recover their costs from potentially responsible persons, a potentially responsible person does not experience section 107 injury and cannot obtain section 107 relief. Instead, a claim by a potentially responsible person is "a quintessential claim for contribution." *Id.* Section 113(f)(1) confirms this fact, permitting a party to seek contribution from "any other" party potentially liable under section 107. *Id.*

Likewise, the appellants in *United Technologies* observed that section 107 states that responsible parties shall be liable to "any other person." 33 F.3d at 101. The appellants contended that the court should not limit section 107 "person[s]" to innocent parties. The Court of Appeals for the First

---

**6.** Thus, while a defendant in a section 107 action can only avoid joint and several liability by demonstrating that the harm at a given site is divisible, *see supra* note 4, parties to a section 113

action may allocate liability among potentially responsible persons based on equitable considerations. *See Redwing Carriers*, 94 F.3d at 1513.

Circuit rejected this argument, finding that such a reading would enable section 107 to swallow section 113, thus nullifying the three-year statute of limitations associated with actions for contribution. *Id.*; see also *Colorado & Eastern*, 50 F.3d at 1536 (if potentially responsible persons were permitted to recover from other potentially responsible persons under section 107, section 113 would be rendered meaningless).

New Castle argues that potentially responsible persons should have the choice to proceed under either section 107 or section 113. We disagree. Allowing a potentially responsible person to choose between section 107 (with a six-year statute of limitations and joint and several liability) and section 113 (with a three-year statute of limitations and apportioned liability based upon equitable considerations) would render section 113 a nullity. Potentially responsible persons would quickly abandon section 113 in favor of the substantially more generous provisions of section 107. We will not read section 107 so broadly that section 113 ceases to have any meaningful application. *See Pennsylvania Med. Soc'y v. Snider*, 29 F.3d 886, 895 (3d Cir.1994) (citation omitted) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"); *see also United Technologies*, 33 F.3d at 101 ("we refuse to follow a course that ineluctably produces judicial nullification of an entire SARA subsection").

At oral argument, New Castle suggested that allowing it to sue under section 107 would not render section 113 a nullity. New Castle contended that section 113 would remain viable for non-settling potentially responsible persons who seek to apportion prospective liability among each other. While New Castle is correct that section 113 is an appropriate vehicle for non-settling parties to apportion potential liability, section 113 may also be used by settling parties seeking to obtain contribution. Section 113 provides that any person may seek contribution "during *or following*" any civil action under section 107. 42 U.S.C. § 9613(f)(1) (emphasis supplied). The use of the phrase "during or following" implies that section 113 may be used by both non-settling and settling parties seeking to obtain contribution from other potentially responsible persons. In addition, section 113(f)(3) states that a person who has "resolved its liability to the United States" may seek contribution from non-settling potentially responsible persons. 42 U.S.C. § 9613(f)(3)(B). Clearly, section 113 is available to consent decree signatories such as New Castle. If we adopt New Castle's interpretation of section 107, however, the provisions of section 113 relating to settling persons will be of no effect.

Who, then, may bring a cost recovery action under section 107? While section 107 historically has been used by governments to recover costs incurred in the clean-up of hazardous sites, it is possible that a private person may be permitted to recover costs under section 107. *See Rumpke of Indiana*, 107 F.3d at 1239–42 (noting that landowner may bring section 107 action if party seeking relief is itself not responsible for having caused any hazardous materials to be spilled onto property); *United Technologies*, 33 F.3d at 99 n. 8 (suggesting, without deciding, that potentially responsible person who initiates clean-up without government prodding might be permitted to bring section 107 action); *Akzo Coatings*, 30 F.3d at 764 (hinting that private landowner forced to clean up hazardous materials that third party spilled onto its property or that migrated there from adjacent lands might pursue section 107 claim).[7]

---

7. In *AM Int'l, Inc. v. Datacard Corp.*, 106 F.3d 1342 (7th Cir.1997), the Court of Appeals for the Seventh Circuit applied the "innocent landowner" exception recognized in *Akzo Coatings* despite the fact that the landowner in *AM Int'l* presumably paid a lower purchase price for the property due to its knowledge that it was buying into an expensive cleanup (and was therefore "a little less 'innocent' than the landowner described in *Akzo*"). *Id.* at 1347. In its brief discussion of section 107, the court did not discuss whether the "less innocent" landowner nonetheless qualified as an innocent landowner under section 107(b)(3). As a result, we need not decide whether we endorse the approach taken in *AM Int'l*, and we emphasize that we do not decide under what circumstances a private party (innocent or "less innocent") may rely on section 107. It is sufficient that we decide that New Castle is a potentially responsible person under section 107(a) who is not entitled to any of the

We do not decide under what circumstances a private individual may rely on section 107, or whether we endorse any of the exceptions for "innocent" landowners suggested by our sister courts. It is sufficient that we decide that a potentially responsible person under section 107(a), who is not entitled to any of the defenses enumerated under section 107(b), may not bring a section 107 action against another potentially responsible person.

Where both parties are "non-innocent" responsible persons, our sister courts have unanimously held that any action to reapportion costs between the parties is an action for contribution. *See, e.g., Colorado & Eastern,* 50 F.3d at 1536 ("any claim that would reapportion costs between these [potentially responsible persons] is the quintessential claim for contribution"); *United Technologies,* 33 F.3d at 101 (since plaintiffs admitted that they were liable parties, court concluded that claim must be one for contribution under section 113); *see also Rumpke of Indiana,* 107 F.3d at 1240 ("when two parties who both injured the property have a dispute about who pays how much ... the statute directs them to § 113(f) and only to § 113(f)"). We agree.

■ While it is possible that a private person may, under certain circumstances, bring a section 107 action, New Castle is not that person. At oral argument, New Castle conceded that it is a potentially responsible person under section 107(a). New Castle is therefore not permitted, under any scenario, to pursue a section 107 cost recovery action against other potentially responsible persons.[8]

### III.

The district court properly characterized Count II of the complaint as a claim for contribution under section 113 of SARA, a claim that is governed by a three-year statute of limitations. 42 U.S.C. § 9613(g)(3). The district court determined that the limitations period began to run on April 19, 1989, the date of the consent decrees. *See id.* (limitations period begins to run from date of judicially approved settlement). New Castle did not file this lawsuit until October 26, 1993. It therefore appears that the limitations period expired and that the district court properly dismissed New Castle's contribution claim with prejudice. New Castle asserts, however, that (1) pursuant to the discovery rule, the cause of action did not accrue until October 28, 1991, when New Castle discovered NUS' alleged negligence; and (2) the statute of limitations was equitably tolled.

### A.

■ We first address the discovery rule. "As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 (3d Cir.1994). "[T]he discovery rule functions to delay the initial running of the statutory limitations period, but only until the plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." *Id.* at 1386. Once the plaintiff has discovered the injury, the statutory limitations period begins to run and the

exceptions in section 107(b); New Castle may not, therefore, pursue a section 107 action against NUS.

8. New Castle argues that the consent decrees did not constitute admissions of liability, *see* 42 U.S.C. § 9622(d)(1)(B), and that it is now a consent decree signatory and not a potentially responsible person. Application of section 113 does not rest upon a finding of liability, however; a potentially responsible person who has "resolved its liability to the United States" in a "judicially approved settlement" may seek contribution. 42 U.S.C. § 9613(f)(3)(B). While

New Castle did not *admit* liability, it did *resolve* its liability. Indeed, the consent decrees state that the signatories "resolved their liability to the United States." As a potentially responsible person who resolved its liability to the United States, New Castle is required to use section 113, and only section 113, to obtain an equitable redistribution of liability among other potentially responsible persons. *See, e.g., Redwing Carriers,* 94 F.3d at 1496 (potentially responsible person who disavows liability in consent decree is still required to pursue contribution claim under section 113 and not section 107).

plaintiff is entitled to the full limitations period. *Id.*

■ New Castle contends that it did not learn of NUS' negligence until October 28, 1991. Thus, according to New Castle, it did not know that it was injured or that its injury was caused by another person until that time. We disagree. The discovery rule does not delay the running of the statute of limitations until a plaintiff is aware of all of the facts necessary to bring its cause of action. Under the discovery rule, a claim accrues upon awareness of *actual injury*, not upon awareness that the injury constitutes a *legal wrong. Id.* New Castle was aware of its injury in 1989 when it agreed to undertake costly remedial action at the landfill. That New Castle did not know in 1989 that it was agreeing to incur NUS' potential fair share of the clean-up costs is not relevant under the discovery rule. *See id.* at 1391.

■ Further, the discovery rule does not delay the accrual of a cause of action until the plaintiff has identified every party who may be liable on its claim. *Zeleznik v. United States*, 770 F.2d 20, 24 (3d Cir.1985) (declining to "make every accrual date indefi-

nite as to unknown possible parties").[9] It is sufficient that New Castle was aware that its injury was caused in part by another person's conduct. At the time of the consent decree, New Castle was aware that other persons were partially responsible for the landfill's condition. Indeed, New Castle brought several contribution actions prior to 1989. New Castle was also aware that NUS' activity and report played a significant role in the determination of New Castle's potential liability.

On April 19, 1989, New Castle was aware of both its injury and the immediate cause of that injury. We agree with the district court that the discovery rule does not render New Castle's section 113 claim timely.[10]

### B.

■ We turn now to the doctrine of equitable tolling. Unlike the discovery rule, equitable tolling presumes the accrual of the cause of action. Equitable tolling stops the running of the statute of limitations in light of established equitable considerations. *Oshiver*, 38 F.3d at 1390. In *Oshiver*, we explained that equitable tolling may be appropriate "(1) where the defendant has actively

9. In *Zeleznik,* the plaintiffs' son was murdered by an individual who had unsuccessfully attempted to turn himself in to the INS prior to the murder. The plaintiffs did not discover the INS' alleged negligence for many years. The plaintiffs argued that "the statute of limitations does not begin to run so long as a reasonably diligent investigation would not have discovered the [defendant's] actions." *Zeleznik,* 770 F.2d at 24. We disagreed. We held that, under the discovery rule, a "claim accrues when the injured party learns of the injury and its immediate cause.... [T]he statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Id.* at 23. The plaintiffs knew of the injury and the "immediate cause" on the day their son was murdered.

10. In addition, New Castle never raised the discovery rule argument to the magistrate judge in response to NUS' original motion for summary judgment or to the district court in its original brief regarding the magistrate judge's report. Instead, New Castle limited its arguments to the following: (1) the claim was a section 107 cost recovery action and was therefore subject to the six-year limitations period; and (2) the doctrine

of equitable tolling should be invoked to toll the limitations period. When the district court properly rejected New Castle's first argument, it observed that "the briefing submitted regarding [equitable tolling is] inadequate." The court ordered the parties to file supplemental briefs on the equitable tolling issue. New Castle raised the discovery rule argument for the first time in its supplemental brief.

The district court determined that the discovery rule argument was waived. The court also rejected the argument on the merits. On appeal, New Castle asserts that the fact that the district court reached the merits of the discovery rule "moot[s] the waiver issue." To the contrary, the district court's holdings were in the alternative. New Castle also argues that the district court permitted New Castle to raise the discovery rule argument when it ordered the parties to brief the issue of equitable tolling. In fact, the court's order expressly limited new arguments to the issue of equitable tolling and did not permit the parties to raise the discovery rule.

We agree with the district court that New Castle waived its discovery rule argument by failing to raise it before the magistrate judge or the district court in the first instance. This is an independent reason for our decision not to apply the discovery rule to render New Castle's section 113 claim timely.

misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* at 1387.

Relying on the second of these three options, New Castle contends that the difficult implementation of the remedial action at the landfill constituted an extraordinary circumstance preventing it from asserting its rights in a timely fashion. In other words, New Castle contends that it was so busy cleaning up the landfill that it did not have time to bring its suit against NUS.

 To invoke equitable tolling, New Castle must show that it exercised reasonable diligence in investigating and bringing its claims. *Id.* at 1390. The district court found that New Castle did not exercise reasonable diligence in investigating and bringing its CERCLA claims. We agree. New Castle discovered NUS' alleged negligence on October 28, 1991—six months before the expiration of the statute of limitations and two years before New Castle filed its lawsuit. At best, New Castle's delay may constitute excusable neglect. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990) (excusable neglect not sufficient to invoke equitable tolling). We conclude that New Castle was not prevented by extraordinary circumstances from filing this lawsuit.[11]

The district court found that New Castle did not exercise due diligence in either investigating potential claims or in bringing its lawsuit once it learned of NUS' negligence.

We agree and conclude that New Castle's delay in bringing this lawsuit is not excused by either the discovery rule or the doctrine of equitable tolling.[12]

### IV.

As a potentially responsible person, New Castle may seek contribution from other potentially responsible persons pursuant to section 113 of SARA. It may not, however, bring a cost recovery claim under section 107 of CERCLA. Because New Castle's section 113 claim against NUS is barred by the statute of limitations, we will affirm the judgment of the district court insofar as it dismissed New Castle's section 113 claim with prejudice. We will also affirm the judgment of the district court insofar as it dismissed New Castle's pendent state law claims.

---

**11.** We do not decide whether (1) New Castle was required to bring this suit during the six months available between October 1991 and the time the limitations period expired, or (2) New Castle was entitled to a reasonable tolling period. *See Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 453 (7th Cir.1990) (where necessary information is gathered before statute of limitations has run, presumption should be that plaintiff could bring suit within statutory period and should have done so). It is sufficient that we determine that New Castle did not bring its suit within a reasonable period after it obtained or could have obtained the necessary information. *See id.*

**12.** Section 113(g)(3) provides that "[n]o action for contribution for any response costs or dam-

ages may be commenced more than 3 years after ... the date of ... entry of a judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3). NUS asserts that this provision is jurisdictional and that the limitations period is absolute and may not be tolled under any circumstances. "Where the filing requirements are considered 'jurisdictional,' non-compliance bars an action regardless of the equities in a given case." *Hart v. J.T. Baker Chem. Co.,* 598 F.2d 829, 832 (3d Cir.1979). Since we decide on the merits that New Castle is not entitled to the benefit of the discovery rule or equitable tolling, we do not decide whether NUS' characterization of section 113(g)(3) is correct.