The NINTH AVENUE REMEDIAL
GROUP, et al., Plaintiffs,

v.

ALLIS CHALMERS CORP.,
et al., Defendants.

No. 2:94–CV–331–RL–1.

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 15, 1997.

Harold Abrahamson, Abrahamson, Reed and Adley, Hammond, IN, Joseph V. Karaganis, A. Bruce White, Mark D. Erzen, John W. Kalich, Karaganis and White, Chicago, IL, H. Alfred Ryan, Chicago, IL, for Plaintiffs.

Dale E. Stephenson, Douglas A. McWilliams, Judith G. Deedy, Squire, Sanders and Dempsey, Cleveland, OH, for Defendants.

### ORDER

LOZANO, District Judge.

This matter is before the Court on White Consolidated Industries, Inc.'s Motion to Dismiss Amended Complaint filed on January

31, 1997. For the reasons set forth below, the motion is **DENIED.**

*BACKGROUND*

This case concerns the Ninth Avenue Dump Superfund Site in Gary, Indiana (the "Site"). The Site, which operated as a chemical and industrial waste disposal facility during the 1970's, has been contaminated by releases and threatened releases of the hazardous waste dumped·there. Plaintiff, Ninth Avenue Remedial Group, has conducted and is conducting cleanup activities at the Ninth Avenue Site under the approval of the Environmental Protection Agency ("EPA").

The Ninth Avenue Remedial Group is an unincorporated voluntary association of corporations which its members created to take collective action related to the Site. All of its members, who are also Plaintiffs in this action, have been named in orders issued by the EPA instructing them to undertake the cleanup of the Site. The Group and its members now sue several Defendants under the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607 and 9613.

In their complaint, Plaintiffs allege that the Defendants, including White Consolidated Industries, Inc. ("WCI"), "by .contract, agreement or otherwise, arranged (or is the successor in industry of an .entity that arranged) for the disposal or treatment at the Site, or arranged with a transporter for the disposal or treatment at the Site, of hazardous substances." Am. Compl. ¶ 8. The Plaintiffs claim that the Defendants are strictly, jointly, and severally liable for all past and future response costs associated with the Site. The Plaintiffs also bring a contribution action for the response costs which the Plaintiffs have incurred which amount to over $20 million.

*DISCUSSION*

WCI moves to dismiss the Plaintiffs' amended complaint on three grounds. First, WCI claims that it rendered assistance in accordance to the National Contingency Plan ("NCP") and is therefore excused from liability pursuant to section 107(d) of CERCLA, 42 U.S.C. § 9607(d). WCI also asks that the

Court dismiss Plaintiffs' section 107 claim because the Plaintiffs are potential responsible parties ("PRP's") which can only sue for contribution under section 113. Last, WCI argues that Plaintiffs' section 113 claim fails because it is untimely.

When deciding a motion to dismiss, this Court must assume the truth of a plaintiff's well-pleaded factual allegations, making all possible inferences in the plaintiff's favor. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund,* 25 F.3d 417, 420 (7th Cir.1994); *Jenkins v. Heintz,* 25 F.3d 536, 537 (7th Cir.1994), *aff'd,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). This Court may not dismiss the Plaintiffs' Amended Complaint "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Black v. Lane,* 22 F.3d 1395, 1403 (7th Cir.1994). In order to prevail, the Defendant must demonstrate that the Plaintiffs' claims, as set forth in the Amended Complaint, are "without legal consequence." *Veal v. First American Savings Bank,* 914 F.2d 909, 913 (7th Cir.1990).

WCI introduces several exhibits with its motion to dismiss such as several EPA orders, several letters, and a· state agency draft order. WCI argues that these documents are part of the pleadings that the Court can consider when deciding a motion to dismiss. A court can consider documents submitted by a defendant attached to a motion to dismiss as part of the pleadings if they are referred to in the plaintiff's complaint and they are central to the claims presented. *See Venture Associates Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993); *Marks v. CDW Computer Ctrs., Inc.,* 901 F.Supp. 1302, 1309 (N.D.Ill. 1995).

Plaintiffs do not object to the Defendant's Exhibits A, D, and E, which are administrative orders issued by the EPA. Because the complaint refers in general to administrative orders by the EPA and because the Plaintiffs do not object to the introduction of those orders, the Court assumes that the Plaintiffs

concede that such documents are central to their claims.

Plaintiffs do object to Exhibits B and C submitted by the Defendants. Exhibit B is a draft order by the Indiana Stream Pollution Control Board ("ISPCB"), which is neither signed nor dated. Exhibit C includes two letters from the ISPCB regarding the use and/or disposal of Blaw Knox Foundry Salt at the Site. (According to the Plaintiffs, Blaw Knox was a subsidiary of WCI, which merged with the latter.) The Court agrees with the Plaintiffs that these documents do not meet the test stated in *Venture Associates.*

The Defendant argues that Exhibits B and C are "documents and records concerning the Site," *see* Am. Compl. ¶ 6, that the Plaintiffs used to identify the Defendants as PRP's and that these exhibits are therefore part of the pleadings. If such a general reference in the complaint were sufficient to make a document a part of the pleadings, any document mentioning a Defendant and the Site could be considered part of the pleadings.

■ In addition, the Court cannot say that such documents are central to the Plaintiffs' claim. Unlike in *Venture Associates,* 987 F.2d at 431–32, where the defendants introduced the letter that constituted the contract in a breach of contract action, or in *Ed Miniat, Inc. v. Globe Life Ins. Group., Inc.,* 805 F.2d 732, 739 n. 12, where the court looked at the employee benefit plan in a case concerning such plan, Exhibits B and C are not central to the Plaintiffs' claim. The Plaintiffs' claims against WCI are based on the alleged actions that WCI took with regard to the Site. To the point that those exhibits clarify the role of WCI in regard to the Site, they might be relevant evidence but they are not necessary to state a claim against the Defendants upon which relief can be granted. Accordingly, the Court will not consider Defendant's Exhibits B and C in deciding the motion to dismiss.

### 1. Rendering Care, Assistance, or Advice In Accordance With the National Contingency Plan ("NCP")

Section 107(d), 42 U.S.C. 9607(d)(1), provides that

> [N]o person shall be liable ... for costs or damages as a result of actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan ("NCP") ... with respect to an incident creating a danger to public health or welfare or the environment as a result of any releases of a hazardous substance or the threat thereof. This paragraph shall not preclude liability for costs or damages as the result of the negligence on the part of such person.

According to WCI, the Plaintiffs cannot recover from WCI because its only connection with the Ninth Avenue Site occurred when foundry salt from WCI was used to cover pools of hazardous substances at the Site in order to reduce the threat of fire and explosion, and to reduce the danger to the community in accordance with the applicable NCP. WCI alleges that the sand was used to comply with an order of ISPCB, which tested and approved the use of the sand as cover.

■ While in a future motion for summary judgment, WCI may prove its allegations, under Federal Rule of Civil Procedure 12(b)(6) the Plaintiffs have stated a valid claim against WCI. The Amended Complaint alleges that WCI or its predecessor in interest arranged for disposal or treatment at the Site of a hazardous substance.[1] That is sufficient to state a claim under CERCLA.

In order to rule in favor of WCI, the Court would have to make factual determinations which are not appropriate in a motion to dismiss. The Court would have to determine whether indeed the only actions of WCI relating to the Site were (1) in the rendering of care and assistance, (2) in accordance with the applicable NCP, and (3) in respect to an incident creating danger to the public or the environment. The Court cannot determine

---

1. The Court notes that the Plaintiffs have not alleged any negligence by WCI. If WCI later succeeds in showing that all of its actions relating to the Site involve rendering care or assistance in accordance with the NCP, the Plaintiffs have not stated a claim for negligence under section 107(d)

this from the complaint and from the documents allowed as exhibits. Even if the Court would have considered Exhibits B and C, the Court could not have granted the motion to dismiss because WCI's argument is premised on the fact that its only involvement with the Site was the use of foundry salt as cover to comply with the ISPCB order. The Court cannot make such factual determination based on the complaint and in all the exhibits the Defendant submitted. Accordingly, the Court will not grant the motion to dismiss on this ground.

### 2. *CERCLA Actions Brought By Other PRP's*

WCI argues that Count One of the complaint must be dismissed because the Plaintiffs are potentially responsible parties ("PRP's") who cannot recover under CERCLA section 107, 42 U.S.C. § 9607. According to WCI, Plaintiffs' only remedy is a contribution action under section 113, 42 U.S.C. § 9613. The Plaintiffs have brought suit both under section 107 and section 113.

Prior to the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), CERCLA did not include an explicit contribution action. U.S. *v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530, 1535 (10th Cir.1995). To avoid leaving a PRP subject to liability under section 107 without means of fairly apportioning the CERCLA costs, courts allowed an implicit right to contribution under section 107 when a PRP had incurred in costs in excess of its pro rata share. *Id.; United Technologies Corp. v. Browning–Ferris Indus., Inc.,* 33 F.3d 96, 100 (1st Cir. 1994). With the enactment of SARA in 1986, Congress codified this implicit right to contribution by amending section 113. *Colorado & Eastern R.R. Co.,* 50 F.3d at 1535; *see also In re Reading Co.,* 115 F.3d 1111, 1119 (3d Cir.1997) ("Congress acted to codify existing federal common law and to replace the judi-

cially crafted measure with an express statutory remedy").

Under section 107 those liable for releases of hazardous waste must pay not only all the response costs incurred by a governmental entity but also for "any other necessary costs of response incurred by any other person." 42 U.S.C. § 9607(a)(4)(B). Under section 113 "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [107(a)]." 42 U.S.C. § 9613(f)(1). In a contribution action the court "allocate[s] response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.*

There are several differences between suits brought under section 107 and those brought under section 113. *See Pneumo Abex Corp. v. Bessemer and Lake Erie R.R. Co.,* 921 F.Supp. 336, 346 (E.D.Va.1996). Defendants held liable for costs under section 107 are subject to strict liability jointly and severally, unless the defendants show that the harm is divisible, which is difficult to do in CERCLA cases. *See Akzo Coatings, Inc. v. Aigner Corp.,* 881 F.Supp. 1202, 1210 (N.D.Ind.1994). Under section 113, defendants are not subjected to several and joint liability and the plaintiff has the burden of allocating the harm to each defendants. Also, the statute of limitations for actions under section 113 is only three years while the statute of limitations is six years under section 107. *See* 42 U.S.C. § 9613(g).

Despite Plaintiffs' arguments to the contrary, the law in the Seventh Circuit is that liable parties can sue only for contribution under section 113. The appellate court first stated this legal principle in *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764 (7th Cir.1994) and then affirmed it *Rumpke, Inc. v. Cummins Eng. Co.,* 107 F.3d 1235 (7th Cir.1997).[2] In *Akzo Coatings,* the Seventh

---

**2.** *Rumpke* created an exception to the law as announced in *Akzo.* Under *Rumpke,* a present landowner who, although liable under section 107 of CERCLA, is not responsible for having caused the release of hazardous material on its property, can recover under section 107. 107 F.3d at 1241; *see also AM Int'l Inc. v. Datacard Corp.,* 106 F.3d 1342 (7th Cir.1997). The First Circuit has also hinted that a PRP who spontane-

ously and without any governmental prodding initiates a cleanup may have a cause of action under section 107. *See United Technologies,* 33 F.3d at 99 n. 8. Neither exception applies to the case at hand because the Defendant claims that the Plaintiffs are liable as generators of hazardous materials, not as landowners, and because the Plaintiffs' response actions with regard to the

Circuit ruled that when a party liable under CERCLA sues others, its claim is "a quintessential claim for contribution ... [Its] claim remains one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make." 30 F.3d at 764. According to the *Akzo* court, a party who generated or disposed of waste at a CERCLA site and who has incurred in response costs does not suffer the kind of injury that gives rise to a claim under section 107. *Id.* only parties forced to clean up contamination due to a third party's spill qualify as plaintiffs under a private cause of action under section 107. *Id.*

All other circuits which have considered the issue directly have agreed with the Seventh Circuit. *See United Technologies Corp. v. Browning–Ferris Indus., Inc.,* 33 F.3d 96 (1st Cir.1994); *New Castle Cty. v. Halliburton NUS Corp.,* 111 F.3d 1116 (3d Cir.1997); *Pinal Creek Group v. Newmont Mining Corp.,* 118 F.3d 1298, (9th Cir.1997); *U.S. v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530 (10th Cir.1995); *Redwing Carriers, Inc. v. Saraland Apts.,* 94 F.3d 1489 (11th Cir.1996). According to these courts, Congress intended to provide full recovery of response costs under section 107 to innocent parties only. *See New Castle Cty.,* 111 F.3d at 1121; *United Technologies,* 33 F.3d at 100.

Prior to SARA, PRP's could sue under section 107 only through an implied right of contribution. *See supra.* After Congress amended Section 113 in 1986, section 107 continued to determine liability, but section 113 now provided the mechanism for a liable party to apportion the costs. *Pinal Creek Group,* 118 F.3d at 1301–02; *see also New Castle Cty.,* 111 F.3d at 1122 ("[S]ection 113 does not in itself create any new liabilities."). To permit a PRP to sue under section 107 directly would render contribution causes of action under section 113 and the statute of limitations for 113 actions meaningless. *New Castle Cty.,* 111 F.3d at 1121, 1123; Colorado & Eastern R.R., 50 F.3d at 1536; *United Technologies,* 33 F.3d at 101.

The Plaintiffs argue that the law on this matter is mixed at best, and cite in support

*Key Tronic Corp. v. U.S.,* 511 U.S. 809, 818, 114 S.Ct. 1960, 1967, 128 L.Ed.2d 797 (1994) (" § 107 ... impliedly authorizes private parties to recover cleanup costs from other PRP's"), and *Amcast Indus. Corp. v. Detrex Corp.,* 2 F.3d 746, 748 (7th Cir.1993) ("[T]he statute permits one responsible person to recover all or part of its response costs from another. § 9607(a)(4)(B)."). As the courts that have decided the question of whether a PRP can sue under section 107 have mentioned, reliance on the *Key Tronic* statement is misguided became the statement is only dicta. *See Stearns & Foster Bedding Co. v. Franklin Holding Corp.,* 947 F.Supp. 790, 799 (D.N.J.1996); *Sun Co. v. Browning–Ferris, Inc.,* 919 F.Supp. 1523, 1529 (N.D.Okla. 1996); *see also In re Reading Co.,* 115 F.3d 1111, 1120 (3d Cir.1997) ("To the extent that the Supreme Court [in *Key Tronic]* refers to an 'overlap' [between section 107 and 113], we construe this overlap to consist of the fact that some courts have held that a landowner may bring a direct action under § 107(a)(4)(B) to recover for its own clean-up costs from a polluter.") The only issue before the *Key Tronic* court was whether CERCLA permitted the recovery of attorney fees.

In *Amcast,* where the Seventh Circuit allowed a PRP landowner to sue another PRP under section 107, the court consider whether the district court had to apportion response costs between the parties when a PRP sues another PRP under section 107. The appellate court held that the lower court did not have to apportion the costs if the defendants had not counterclaimed for contribution. 2 F.3d at 748. Although the court did not consider the question of whether a PRP can only sue for contribution under section 113, the holding of the appellate court seems to clash with the idea that a PRP can only sue for contribution, which does require allocation from the lower court.

The Court does agree that *Amcast* appears to conflict with *Akzo.* Nonetheless, when confronted directly with the issue in *Akzo* the Seventh Circuit expressly ruled on the question before this Court. The Court cannot

Site occurred only after the EPA ordered them to clean up.

ignore *Akzo* solely based on the implications of *Amcast.* The Seventh Circuit have subsequently endorsed *Akzo in Rumpke* and in AM Int'l. In addition, the final outcome in *Amcast* may stand even in light of *Akzo* because the PRP innocent landlord exception to the *Akzo* ruling likely applied to the plaintiff in *Amcast.*

The Plaintiffs cite several cases holding that PRP's can sue directly under section 107, but these are all district court cases from other circuits. *See, e.g., Pneumo Abex Corp.,* 921 F.Supp. 336 (E.D.Va.1996); *Barmet Aluminum Corp. v. Doug Brantley & Sons, Inc.,* 914 F.Supp. 159 (W.D.Ky.1995); *Charter Township of Oshtemo v. Am. Cyanamid Co.,* 910 F.Supp. 332 (W.D.Mich.1995). Furthermore, several of the cases cited by the Plaintiffs have subsequently been reversed or overruled by the appellate courts in their circuits. *See, e.g., Adhesives Research, Inc. v. Am. Inks & Coatings Corp.,* 931 F.Supp. 1231 (M.D.Pa.1996), *overruled by New Castle Cty.,* 111 F.3d 1116; *Pinal Creek Group v. Newmont Mining Corp.,* 926 F.Supp. 1400 (D.Ariz.1996), rev'd, 118 F.3d 1298, 1997 WL 362462.

The Plaintiffs and the district court cases that they cite argue that the express language of section 107 permits a cause of action by the Plaintiffs. They claim that section 107 provides for the recovery of response costs by "any other person," not "any innocent person." See *Adhesives Research,* 931 F.Supp. at 1238; *Pinal Creek Group,* 926 F.Supp. at 1406; *Pneumo Abex,* 921 F.Supp. at 347; Barmet *Aluminum Corp.,* 914 F.Supp. at 163; *Charter Township of Oshtemo,* 910 F.Supp. at 337. SARA did not add any qualifications to this broad language. *Pinal Creek Group,* 926 F.Supp. at 1406; *but see New Castle Cty.,* 111 F.3d at 1122 (stating that although section 107 provides for recovery of costs expended by any person, such person must experience an injury of the type that gives rise to the claim under section 107).

According to this line of cases CERCLA does not differentiate between liable and nonliable parties when suing under section 107, but rather between parties that have engaged in response actions and those that have not. *Pinal Creek Group,* 926 F.Supp. at 1409. Allowing liable but respondent parties to sue under section 107 creates incentives for early cleanup and response by (1) imposing the burden of proof concerning allocation on the defendants; (2) minimizing the plaintiff's cost in tracking down and suing every other PRP; (3) allowing the party that initiates cleanup the benefit of a longer statute of limitations; and (4) relieving the plaintiff of the risk of being held liable for "orphan shares"—cleanup costs that correspond to insolvent or absent parties. *Pinal Creek Group,* 926 F.Supp. at 1407; *see also Pneumo Abex,* 921 F.Supp. at 347 (stating that allowing PRP's to sue under section 107 preserves the Act's incentive to settle early); *Charter Township of Oshtemo,* 910 F.Supp. at 337 (stating that liable parties may not be amenable to any initiate cleanup if their only recourse is through contribution).

■ While the Court may recognize the strength of some of these arguments, the Court is bound by the Seventh Circuit decision in *Akzo.* In this circuit, liable parties can sue other liable parties under CERCLA only for contribution, except for the exception discussed in *Rumpke* and *Amcast.*

The Plaintiffs argue further that before they can bring a section 113 action, there must be a prior or pending section 106 or section 107 action. Because no such action has occurred in this case, Plaintiffs argue that they can only bring a section 113 action if they also bring a section 107 action. Otherwise, they will be without remedy.

The Plaintiffs cite dicta from *Rumpke,* 107 F.3d at 1241, stating that "a § 106 or § 107 action apparently must either be ongoing or already completed before § § 113(f)(1) is available." The appellate court's suggestion was based on language from section 113(f)(1) stating that a person may seek contribution from other PRP's "during or following any civil action under section [106] ... or under section [107(a) ]." The court apparently ignored further language in section 113(f)(1) that clarified that "[n]othing in [the] subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action." 42 U.S.C. § 9613(f)(1); *see also In re Reading Co.,* 115

F.3d at 1120 (" § 113(f)(1) specifically permits an action for contribution to be brought 'in the absence of a civil action.' "); *Sun Co.,* 919 F.Supp. at 1530 n. 5 ("A civil action clearly is not a precondition for bringing a contribution action, either under CERCLA . . . or common law.") (citation omitted).

■ In light of the express language of Section 113(f)(1), this Court will not be guided by the equivocal dicta in *Rumpke.* Without a direct holding from the Seventh Circuit to the contrary, this Court finds that PRP can bring a section 113 action even when no prior or pending section 106 or 107 civil actions have occurred.

Although this Court agrees with the legal arguments of WCI, the Court will nevertheless deny WCI's motion because the Plaintiffs have not been adjudicated liable parties under CERCLA. Although Seventh Circuit precedent as well as case law from other courts cited above clearly states that a PRP can only sue for contribution, the case law is mixed as to whether a party must be adjudicated liable to be precluded from suing under section 107. In many cases, although the plaintiffs had not been adjudicated liable, they had admitted liability. *See, e.g., Pinal Creek Group,* 118 F.3d at 1299 (where the plaintiff admitted that it was partly responsible for a portion of the cleanup costs); *New Castle Cty.,* 111 F.3d at 1124 (where the plaintiff conceded that it was a PRP under CERCLA); *United Technologies,* 33 F.3d at 101 (where the plaintiffs admitted that they were liable under CERCLA). In some other cases where the plaintiffs did not admit being liable but the courts did not allow them to sue under section 107, the issue was before the court in a motion for summary judgment and there was undisputed evidence before those courts that the plaintiffs were liable under CERCLA. *See, e.g., Sun Co.,* 919 F.Supp. at 1528 (where, in a summary judgment motion, the plaintiffs conceded that they had generated waste at the site); *INX Int'l Inks Co. v. A.C. Rochester,* No. 89–C–834, at 9, 1996 WL 928490 (E.D.Wis. Dec. 18, 1996) (where, in a motion for summary judg-

ment, undisputed evidence showed that a plaintiff had generated waste disposed at the site); *see also Redwing Carriers,* 94 F.3d at 1496 (where the plaintiff had been adjudicated liable under CERCLA by the trial court in a motion for summary judgment).

Two district courts in this circuit have espoused different views on whether a plaintiff must concede liability or be adjudicated liable before it is precluded from suing under section 107. A Wisconsin court concluded in an order for summary judgment that "the party need not have admitted liability or have been adjudged liable for the court to determine that the CERCLA action is one for contribution." *INX Int'l, Inc.'s Co.,* No. 89–C–834, at 10 (E.D.Wis. Dec. 18, 1996).

In contrast, the court in *U.S. v. SCA Services, Inc.,* 865 F.Supp. 533, 543 (N.D.Ind. 1994) rejected the defendant's motion to dismiss the plaintiff's section 107 action because the plaintiff had not been adjudicated liable and had not conceded liability. In *SCA Services,* the plaintiff denied liability even though it had entered into a consent decree with the government, allegedly to avoid the cost of litigation. 865 F.Supp. at 543. The court recognized that CERCLA allows parties to enter into consent decrees with the Government without admitting liability. *See* 42 U.S.C. § 9622(d)(1)(B) ("[T]he participation of any party in the process under this section shall not be considered an admission of liability for any purpose.") The *SCA Services* court added further:

> Even though liability is strict under CERCLA, it is obvious that legal liability cannot attach until a party has either admitted liability or has been adjudicated as liable. Strict liability is simply "liability without fault," not liability without adjudication. Even in a strict liability case it is still necessary for there to be a determination that the conditions giving rise to strict liability were, in fact, present.

865 F.Supp. at 543 (citation omitted).[3]

■ This Court adopts the position of the *SCA Services* court. The Court first notes

3. The *INX Int'l Inks* court and the *SCA Services* court also differ in their interpretation of *Akzo.* According to the *INX Int'l* Inks court, the plain- | tiff in *Akzo* had not been adjudicated liable or admitted liability. In contrast, the *SCA Services* court interpreted *Akzo* as a case where the plain-

that the motion before the Eastern District of Wisconsin, as well as the motion before the court in *Akzo*, were motions for summary judgment which allowed the courts to rely on the undisputed facts in the record to make their decision. The motion before this Court is a motion to dismiss, as was the motion before the *SCA Services* court. The determination of whether the Plaintiffs are liable as PRP's involve factual questions best left for a motion for summary judgment or for trial. *See, e.g., Rumpke*, 107 F.3d at 1239 (where the court denied summary judgment because there was a genuine issue of fact as to whether the landowner PRP had disposed of waste at the site).

From the stipulations filed by some of the Plaintiffs, see Stipulation Regarding Certain Facts, all filed on July 23, 1997, by Plaintiffs Pierce and Stevens Corp., Cargill, Inc., Flint Ink Corp., General Electric Company, Monsanto Company, Morton Int'l. Inc., Navistar Int'l Transportation Company, and Regal Tube, it is undisputed that at least some of the Plaintiffs generated waste that was disposed of at the Site. Nonetheless, the Plaintiffs deny liability. Even if they arranged for the disposal of waste at the Site, the Plaintiffs can present proof that the releases occurred under the very limited circumstances that constitute defenses under CERCLA. See 42 U.S.C. § 9607(b). Although few persons that fall under section 107(a)(1)-(4) would escape liability, the Court cannot say at this stage in the case that none of the Plaintiffs could do so. While the outcome could be different in a motion for summary judgment, the motion before the court is a motion to dismiss.

At the same time, the Court warns the Plaintiff that if the Defendants in this case show either in a motion for summary judgment or at trial that the Plaintiffs are liable as PRP's under CERCLA, they will not be able to recover under section 107. While the Court has denied WCI's motion to dismiss because the Court cannot conclude at this TOTAL P.03 juncture that the Plaintiffs are liable, the Court does agree with the legal argument presented by WCI. If the Plaintiffs are indeed liable, the Court will not hold Defendants jointly and severally liable and will apply the three-year statute of limitations to Plaintiffs' action.

The Court, however, also warns the parties that if it later determines that the Plaintiffs can proceed against the Defendants under section 113 only, and they cannot hold the Defendants jointly and severally liable, the Court may exercise its equitable authority under section 113(f)(1) to allocate the cost for any orphan shares among all the parties. *See Pinal Creek Group*, 118 F.3d at 1303 ("Under § 113(f)(1), the cost of orphan shares is distributed equitably among all PRP's, just as cleanup costs are."); *Stearns & Foster Bedding*, 947 F.Supp. at 801 (stating that although a PRP cannot sue under section 107, the courts, in equitably allocating the costs in a contribution action, can also allocate orphan shares, thus relieving the PRP plaintiff from the burden of paying for all the orphan shares.) Furthermore, the Court is aware that one of the factors it may take into account when allocating the response costs is the degree of cooperation shown by a PRP in cleaning up the site. *See Pinal Creek Group*, 118 F.3d at 1304–05.

3. *Statute of Limitations for the Plaintiffs' Section 113 Action*

Last, WCI argues that the Court should dismiss the Plaintiffs' section 113 action because it is time barred under CERCLA section 113(g)(3). CERCLA mandates that

no action for contribution for any response costs or damages be commenced more than three years after—(A) the date of judgment in any action under this chapter for recovery of such costs or damage, or (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3). WCI claims that the statute of limitations for the Plaintiffs' contribution action began running on January 30, 1991, when several PRP's entered into a de

tiff had admitted liability. 865 F.Supp. at 542–43 (quoting *Akzo*, 30 F.3d at 763).

minimis settlement with EPA. Therefore, WCI argues, the Plaintiffs' section 113 claim against it filed in June 1996 is untimely.

Although the Plaintiffs were not parties to the de minimis settlement in January 1991, WCI claims that the settlement triggered the statute of limitations for the Plaintiffs because it applies to a contribution action for "any response cost or damages" regardless of whether the Plaintiffs took part in the de minimis settlement agreement. WCI argues that because the statute does not state that it triggers the statute of limitations only for settling parties, it must apply to nonsettling parties too. According to WCI, this is justifiable because at the time a de minimis settlement is entered, the relative contributions to a site by each party are determined and the parties have sufficient information on the site, the responsible parties, and their share of responsibility. WCI argues further that to limit the triggering of the statute of limitation to the de minimis settlers would be meaningless because in reality de minimis settlers never sue for contribution.

The main problem with WCI's argument is that a PRP may not have a cause of action against other PRP's at the time the de minimis parties settle. If a PRP has not incurred either response costs or damages at the time other parties settle, that PRP does not have a cause of action, even if it's aware that in the near future the government may demand it to engage in a cleanup response. How can a de minimis settlement trigger a statute of limitations in a cause of action which is not viable yet? As a general rule, the statute of limitations does not begin to run until a plaintiff's cause of action accrues. *See New Castle Cty.,* 111 F.3d at 1124. Therefore, the language of section 113(g)(3) does not need specify that a settlement triggers the statute of limitation only for those claims which accrue with the settlement.

 At this point the Court does not have to decide what event, if any, triggers the statute of limitations for the Plaintiffs' contribution action. *Compare Rumpke,* 107 F.3d at 1241 ("The contribution claim would not accrue until one of the events specified in § 9613(g)(2) occurred, at which time three years would be available in which to file an appropriate suit.") with *Sun Co.,* 919 F.Supp. at 1531 ("Absent a judgement, a cause of action for contribution does not arise until the party seeking contribution has paid more than her fair share of a common liability."). The Court only holds that the de minimis settlement of which the Plaintiffs were not parties did not trigger the statute of limitations for their section 113 claim. For this reason, WCI's Motion to Dismiss is **DENIED.**

*CONCLUSION*

For the foregoing reasons, the Court **DENIES** White Consolidated Industries, Inc.'s Motion to Dismiss Amended Complaint.